990.   ROSE *v.* THE STATE.

991.   R. M. ROSE COMPANY *v.* THE STATE.

1. Section .428 of the Penal Code, which prohibits the soliciting or taking of orders for the sale of intoxicating liquors in counties where such sales are by law prohibited, is a police regulation, necessary for the effective enforcement of the State's prohibitory regulations.· The act forbidding soliciting orders for intoxicating liquors is not affected by the extension of the scope of its operations, caused by. the passage of the general prohibition act.

2. By the terms of § 428 of the Penal Code, the solicitation or taking of orders for the sale of intoxicating liquors is forbidden, whether the solicitation is by the seller personally, or only by an agent of the seller. To solicit the sale of intoxicating liquors by letter or circular is a crime, if the letter is intended to be delivered, and is in fact delivered as intended, in any county in this State.

(*a*) The term "solicit personally" includes any act done by the seller himself which may tend to effect a sale, as contrasted with any like act "by an agent" of the seller, tending to a similar result.

(*b*) Whether a solicitation is personal or by an agent is not dependent upon the personal presence of the solicitor, but upon whether the means of solicitation, whether oral or in writing, are used by an agent or by the principal himself. The solicitation of orders by mail for the sale of intoxicating liquors is personal solicitation, if the seller himself in person writes or mails the letter received by the prospective buyer.

(*c*) The venue of a crime committed by mail is at the point where the matter transmitted by mail is delivered and takes effect. Where a sale of intoxicating liquors is solicited by a communication, written or printed, and mailed in one State, as no crime is committed until the delivery of the letter in the State where such solicitation is forbidden, the courts of the county where the letter is received by the addressee of such letter and its contents are ascertained have jurisdiction of such offense.

3. The State may punish for a crime committed through the mails as a medium, without in any sense impinging the undoubted right of the national government to control the mails. Freedom to use the mails does not extend to their use as a means of committing crime.

4. "The general· power of the States to control and regulate, within their borders, the business of dealing in, or soliciting orders for, the purchase of intoxicating liquors is beyond question." DeLamater *v.* South Dakota, 205 U. S. 93.

5. Under the provisions of the Wilson act, a statute which (in aid of a police regulation prohibiting the sale of intoxicating liquors within a State or any portion thereof) prohibits the solicitation of orders is not, for the reason that such statute conflicts with the power of Congress to regulate and control interstate commerce, void as to orders solicited in said State, although the seller and the liquor to be sold may both be in another State; because such regulation in no wise encroaches upon the power of Congress to control interstate commerce. The exercise of such State regulation, so far from being in conflict with the power of Congress

to regulate interstate commerce, is expressly allowed by law. 26 Stat. 313, c. 728.

6. A corporation may be indicted and punished for any violation of law, by its servants and agents in the conduct of its business, which it commands or ratifies. That the servant may also be punished does not relieve the corporation.

Indictments for misdemeanor, from Bartow superior court—Judge Fite. January 30, 1908.

Argued March 10,—Decided July 31, 1908.

*Anderson, Felder, Rountree & Wilson* and *Rosser & Brandon,* for plaintiffs in error.

*Samuel P. Maddox, solicitor-general,* contra.

RUSSELL, J. The plaintiffs in error were accused in two presentments, which are practically identical. Demurrers were filed in both cases, and the plaintiffs in error except to the judgment of the superior court overruling their demurrers. As the same points are presented in both bills of exceptions, they will be considered together.

The defendants in the court below were accused of the violation of §428 of the Penal Code, which forbids the solicitation or taking of orders for intoxicating liquors in any county in this State where the sale of such liquors is prohibited by law, high license or otherwise. Each presentment contains two counts, charging the offense of misdemeanor. We quote so much of each count as is material. In the first count it is alleged, that the defendants, in Bartow county, unlawfully did "solicit personally and by agent the sale of spirituous, malt, and intoxicating liquors in said county of Bartow, where the sale of said liquors is prohibited by law, high license and otherwise, . . and soliciting being made by and through the United States mail, by mailing letters to citizens of Bartow county from the city of Chattanooga, Tennessee, containing self-addressed envelopes, order blanks, and other printed and written matter soliciting the sale of said liquors, said letters having been mailed and delivered to W. A. Cleveland and I. W. Alley in Bartow county, and other citizens of Bartow county whose names to the grand jurors are unknown." In the second count of the presentment it is alleged that the defendants were guilty of the offense of misdemeanor, for the reason that they did "solicit personally and by agent the sale of spirituous, malt, and intoxicating liquors in said county of Bartow, where the sale of said liquors is

prohibited by law, high license and otherwise, . . said soliciting being made by and through the United States mail, by mailing letters to citizens of Bartow county from the city of Chattanooga, Tennessee, containing self-addressed envelopes, order blanks, and other printed and written matter soliciting the sale of said liquors, said letters having been mailed to W. A. Cleveland and I. W. Alley in Bartow county, . . said liquors then and there being in Chattanooga, in the State of Tennessee, and to be shipped to said Cleveland and Alley from Chattanooga, where the said Randolph Rose and R. M. Rose Company, at the time of said soliciting, had a place of business where they were engaged in selling said liquors."

The defendants demurred to the presentments, upon the following grounds : (1) That the indictment set forth no offense under the laws of Georgia; that it is not a crime under the laws of the State of Georgia to solicit the sale of intoxicating liquors not personally or by agent, but through the United States mail from a point without to a point within the State. (2) That the indictment shows on its face that the defendants are prosecuting a legal business, are not violating any penal law of the State of Georgia, have done no act in the county of Bartow, State of Georgia, either personally or by agent, but that they only mailed certain documents, therein mentioned, in the State of Tennessee ; which is not a crime under the laws of the State of Georgia. (3) That the indictment shows upon its face that the defendants are engaged in an interstate business not prohibited by the constitution or laws of the United States, and not subject to be interfered with by the laws of Georgia. (4) That the indictment shows upon its face that the defendants are using the United States mails for legal ends and the conduct of a legal business, and it is incidental to interstate commerce. (5) That the indictment shows upon its face that the defendants are not guilty of any crime or penal offense, in that soliciting, through the United States mail, orders for the sale of liquors in Bartow county, Georgia, to be shipped from Chattanooga, in the State of Tennessee, is a lawful use of the United States mails, and is incidental to interstate commerce, namely, the sale and shipment from the State of Tennessee into the State of Georgia. (6) That if the laws of Georgia undertake to make criminal the solicitation of the sale of liquors by mailing letters from without the State to persons within the State,

such liquors to be sold and shipped from without the State to persons within the State ordering the same, such laws are void, as contravening section 8, subdivision 3, article 1 of the constitution of the United States. The foregoing statement embraces the substance of the points presented in the demurrers of both defendants alike. The R. M. Rose Company also demurred upon the ground that, being an artificial person, it is not subject to indictment nor punishable for the criminal offense set out in this indictment.

Other than the one last stated (and which will be last considered) the demurrers raise three main points: (1) That the solicitation of orders for whisky by mail is not forbidden by the terms of §428 of the Penal Code, for the reason that to solicit by mail can not be to solicit "personally" and is not included in that term. (2) That even if such solicitation be a violation of the law when the point from which the letter is sent and the point where the letter is received are both within the same State, yet the statute is without effect where the letter is sent from another State, because to give the law effect would be to interfere with interstate commerce and an incident to interstate commerce, as well as to interfere with the power of Congress to control the postal service. (3) That if it be held that the solicitation of sales of liquor by mail from without the State to a person within the State comes within the provision of §428 of the Penal Code when the liquor to be sold is to be shipped from without the State to persons within the State, then §428 of the Penal Code is void, as contravening the power of Congress to regulate commerce among the several States.

The questions raised by this record present issues of the highest importance to the people of this State, as well as of the gravest legal import. It is clear, upon the one hand, that the intention of the General Assembly, in the passage of the general prohibition act of 1907 (Acts of 1907, p. 93), will be largely frustrated and brought to naught if it be held that liquor dealers have only to establish themselves beyond the borders of this State and carry on a mail-order business, in which their stock of goods is without the State, instead of within its borders. Upon the other hand, if the sale of intoxicating liquors comes within the same category as other objects of interstate commerce, or if it is so held by the Federal courts, no State can prevent this.

The sale of liquor is a legitimate business, where it has not been placed under statutory ban; and it is not within the purview of our duties, nor our purpose at this time, to discuss the moral aspect of either the sale or use of intoxicating liquors. We shall deal only with the legal aspect of the case, that is, with that legal restriction or prohibition which is in the nature of police regulation. We recognize also that, the sale of liquor being a legitimate object of interstate commerce, no State statute can stand which encroaches in any degree upon the prerogative of Congress to regulate commerce between the States. We recognize that the constitution of the United States, and laws of the United States in pursuance thereof, are the supreme laws of this State; and so far as the writer is concerned, he feels no little pride, as a Georgian, in the fact that the framers of our constitution took the pains to embody in the organic law of this State a clear declaration of Georgia's paramount allegiance to the Federal constitution and laws.

The growth of the conviction that total prohibition was the best regulation of intoxicating liquor was gradual in this State. Prior to the passage of the local-option act, numerous counties had, by local laws, some directly, and others by high license, prohibitory in amount, abolished the sale of intoxicating liquors within their borders. By the passage of the act which prohibited the manufacture, sale, barter, giving away to induce trade, etc., of any alcoholic, malt, spirituous or intoxicating liquors, approved August 6, 1907, the legislature of Georgia intended, as a matter of police regulation, to prohibit the sale of all intoxicants in this State. Every device by which the unlawful use of liquors in this State could be supplied, which was suggested to legislative ingenuity, is guarded against in the act last above referred to. It can not be conceived that the legislative contemplation extended only to the prevention of sales, for, if so, this would have worked merely to deprive the public treasury of a large income, devoted to the cause of public instruction. Whether wisely or not, the legislature must have determined, either upon the ground of public health, public peace, or the public morality, or having all of them in view, that it was best, as a matter of internal police regulation of the State, that intoxicating liquors should be placed under the ban of the law. It is not to be denied that the law is sweeping and drastic. This,

however, only goes to make more manifest the intention of the lawmakers, and to accentuate our duty, as a court, to enforce this manifest intention. We have given to each question involved most serious consideration. No question can be more important than some of those involved in the present writ of error. The very right of the sovereign State to control its internal police regulations is called in question. If the contention of the plaintiffs in error is correct, then the State is powerless to prevent, by the enforcement of absolute prohibition, the evils it apprehends from the sale of intoxicants within its borders. It can prevent its own citizens from soliciting sales within its borders, but the arm of the State is powerless to prevent non-residents from a similar violation of its policy. It can prevent its own citizens from lighting the fires of crime by inducing those to buy who otherwise might not do so, but can not prevent citizens of Tennessee and Alabama from shooting arrows of fire, which may cause the same combustion. The State, according to this contention, may keep down fire set out by its own citizens, but can not protect our homes in Georgia from being set on fire by showers of lighted arrows shot from Florida and Tennessee.

1. Keeping in mind the provisions of the Wilson act and various decisions of the Supreme Court of the United States, construing it, it is our deliberate opinion that §428 of the Penal Code of this State, which prohibits the soliciting or taking of orders for the sale of intoxicating liquors in counties where such sales are prohibited, is a salutary police regulation, necessary for the effective enforcement of the general prohibitory statute of 1907. It was considered necessary when in only a portion of the counties in the State prohibition had become effective by local option. If prohibition were effective in only one county (and particularly if it were a border county), it seems to us that a non-resident solicitor would be as much liable as a solicitor who was a resident of this State. In no view of the case, therefore, can the effect of §428 of the Penal Code be affected by reason of the fact that the practical effect of the passage of the prohibition law of 1907 has been to extend the scope of the territory within which §428 becomes operative.

2. The initial question to be considered in the determination of this case is whether §428 of the Penal Code forbids the solici-

tation of orders for whisky or other intoxicating liquors by mail in any case; that is to say, whether it would be a violation for A. B., living and doing business in Atlanta, Georgia, to solicit by letter, mailed in Atlanta, Georgia, an order for whisky from C. D., living in Elberton, Georgia. We must necessarily consider this phase of the question first, because, if the solicitation for the sale of intoxicants, by mail, through a letter which is delivered in a county where by law the sale of said intoxicants is prohibited, be no offense, where the solicitation by mail begins and ends within the jurisdiction of this State, then it would be unnecessary to consider the questions raised and argued at length as to whether the defendants could be convicted because their letters were written and mailed in the State of Tennessee. If it is not a violation of the law to solicit the purchase of intoxicating drinks by mail, when the solicitation is initiated and also concluded within the State, there can in no event be an unlawful solicitation, within the terms of §428, where the United States mail is used as the medium of communication between him who desires to sell and him who might be induced to buy intoxicating liquors within a county where the sale has been prohibited. Section 428 of the Penal Code, as amended by the act of 1897 (Acts of 1897, p. 39), is as follows: "If any person shall sell, contract to sell, take orders for, or solicit, personally or by agent, the sale of spirituous, malt, or intoxicating liquors in any county or town or municipal corporation or militia district or other place where the sale of such liquors is prohibited by law, high license or otherwise, he shall be guilty of a misdemeanor." Section 428 was taken originally from the act of 1893 (Acts of 1893, p. 115), which act, in its first section, also contained what is now §429. We mention this fact because in the argument considerable stress is laid on the language of §429, as sustaining the argument that the original act applies only to solicitations made by one in person, and that for that reason the solicitation of sales, referred to, whether it be by the seller himself or by his agent, must be by personal visit to the locality where such sales are prohibited. The language of §429 is: "The foregoing section does not prevent the furnishing of such liquors to persons in such prohibition counties upon purchases made of licensed dealers in such liquors outside of, and not solicited or contracted for in, said prohibition counties. Nor

does it prevent the soliciting of orders from licensed druggists and practicing physicians." It will be found, upon examination of the original act of 1893, that §429 is merely a proviso to the provisions of the only enacting section of the original act, the dominant purpose of which was to make the law effectual in those counties where the will of the people had decreed that intoxicating liquors should no longer be sold.

In our opinion the use of the words "personally or by agent," in the act of 1893, if not entirely superfluous, can in no event be construed as restricting the meaning and effect of the word "solicit" to personal solicitations only. It must be remembered, as a notable historical fact, that originally many of the strongest prohibitionists were not skilled lawyers, and vice versa. The words "personally or by agent" were, no doubt, inserted, not with the wish of restricting the meaning of the word "solicit," but in the attempt to broaden it. And when we consider that the intention of the act, to which we have already referred, was to make criminal the introduction of intoxicants from a county where the sale of such intoxicants was legal, into a county where the sale was prohibited, it is readily to be seen that while the solicitation which was made penal could be a personal solicitation, it was none the less made a crime for any person, either himself or by an agent, in any way to solicit the sale of intoxicating liquors where it was prohibited by law. The use of the word *"personally"* is more of a reference to the doctrine that in misdemeanors all who participate in any way in the commission of a criminal act are principals, than a reference to the means which might be employed to solicit sales. The legislature declared, in effect, in this section, what has always been the policy of this State with reference to the violation of its liquor laws (as to sales under license and to minors) that the solicitor should be responsible for the act of his agent, at his peril, as well as that the agent should be criminally responsible for his own act. The clear meaning of the act of 1893, so far as soliciting is concerned, is that the person who sells intoxicating liquor or solicits its sale in a prohibition county shall be responsible, whether the act is committed by himself individually, or by any person who is his agent, it matters not what may be the means employed by either to effect the illegal solicitation. Our view is sustained and strengthened by the provisions of §429,

which was originally a part of the same act and elucidates the true intention of the legislature; for the act proceeds to say that licensed dealers outside of prohibition counties, who have not solicited sales, may furnish intoxicating liquors to persons in prohibition counties, and yet, in this provision, there is no repetition of the words "personally or by agent." There is here no limitation placed on the word "solicit," as would have been if the word "solicit," in the earlier portion of the act, had been intended to be restricted to solicitations made in person. The lawmakers had already said, in section 1 of the act, that any solicitation, whether made by the seller or by an agent of his, was unlawful; and, having thus defined what it meant by the word "solicit," the legislature proceeded to say, by proviso in the same section, that one who had not solicited could furnish liquors, even in prohibition counties, upon unsolicited purchases made of them. This permission, of course, granted nothing, and amounted to nothing (except that it may be used to illustrate the meaning placed by the General Assembly upon the word "solicit," as qualified by the words "personally or by agent"), because it has never been made penal to purchase intoxicating liquors, and the sellers referred to were licensed dealers in the counties of their places of business. It is further to be noted that the language "personally or by agent" is not repeated after the word "solicit," in the provision of the act of 1893 relating to licensed druggists and practicing physicians. On the contrary, the language used clearly disclosed that in using the words "personally or by agent," in the portion of the act which is now §428, the legislature was referring only to the fact that the solicitation might be done either by a principal or his agent, and not to the means which might be employed in order to solicit; for the language employed is: "the soliciting of orders from licensed druggists and practicing physicians." This is not interdicted by the act, no matter what means may be employed either by the principal or by the one employed as his agent to solicit sales in his behalf.

The learned counsel for plaintiffs in error insist that the word "personally" is the keynote, in determining what the act forbids, and quote various liquor laws from which it is absent, to support the statement that "it is a stranger to the State's liquor laws." They insist that if §428 had read "if any person shall sell or

solicit the sale of spirituous liquors," etc., the family resemblance
to the rest of the State's liquor laws would have been preserved.
It is true, as stated by counsel, that the word "personally" is not
to be found elsewhere in the liquor laws of the State; but there
is not, for that reason, any force in the argument that the legis-
lature intended only to forbid personal solicitation, unless it can
be said that the word "personally" also qualifies the word "agent."
Even a mere superficial reading will disclose that this is not true.
The agent, then, could solicit in any manner he saw fit; and even
in this view, the most that could be said would be that the princi-
pal could not be found guilty, unless he in propria persona and
by personal presence and solicitation in the prohibition county
violated the law, and yet one who is his agent, as the word "agent"
necessarily refers back to the word "solicit," if he in any manner
solicits a sale, would be guilty, though his principal would not.
It is not to be presumed that any legislature intended to create
such an anomaly as this.

We have already referred to the fact that acts are frequently pre-
sented and pressed to passage whose authors are not skilled in the
use of such language as will convey most aptly the thought desired
to be expressed, and yet the language of the section now under
consideration is very similar to that of the statute forbidding the
sale of liquor to minors, and was, no doubt, intended to express
exactly the same thought, as the latter statute forbids "any person,
by himself or another," to sell or furnish intoxicating liquors to
minors (Penal Code, §444). The same thing is true of §445 of
the Penal Code, which forbids any person, who keeps or carries on,
"either by himself or by another," a barroom, to employ a minor
in the barroom. Other statutes of the State, upon other subjects,
use the same language,—"any person who shall by himself or
another." This is nothing more than a warning to the entire
citizenry of the State that principals and accessories are alike pun-
ishable. We have no difficulty, therefore, in holding that it was
the intention of the legislature (in order to make the prohibition
laws of those counties that might adopt them effective) to abso-
lutely prohibit the encouragement of purchases of intoxicating liq-
uors in counties which had prohibited the sale, by any kind or
form of solicitation, except that licensed sellers might solicit or-
ders from licensed druggists and practicing physicians. As the

buying of liquor had not been made a crime (even if the sale were made in a prohibition county, and were unlawful), and as the legislature, no doubt, considered that it could not punish the purchaser, and therefore could not prevent purchases from being made, liquor dealers who had not solicited the order were given permission to furnish purchasers who had come to them unsolicited, as a reward for their observance of the law. But the words "personally or by agent," so far from being restrictive, were, no doubt, inserted with the intention of being as absolutely inclusive of all kinds and methods of soliciting as the expression, "from the north to the south," or "from the east to the west," would be esteemed inclusive of all intermediate points.

The next question, then, is whether the legislature had the power to penalize a solicitation which originated, say, in Fulton county and was completed in Washington county, so as to make the offense punishable in the latter county. To put the exact question raised by this record, if the solicitation was made by mailing the letter in Fulton county, and the letter was received by due course of mail by the person to whom it was addressed, in Washington county, would the courts of Washington county have jurisdiction of the case? We think so. It has been held that if one standing in one jurisdiction fires a gun and kills another, who is in a different and distinct jurisdiction, the courts of that government, where the bullet took effect, alone have jurisdiction of the crime, if any was committed. A thief may be prosecuted in any jurisdiction into which the stolen goods are carried. He who sends poison by mail with the intent of accomplishing the death of another, if the poison be taken and death results, is triable for the murder where the poison is administered. It it be a crime at all, then, to solicit sales of whisky, regardless of the method of soliciting, the venue of the offense must be the point where the solicitation is communicated to the person sought to be solicited. If the agent (for, as we have said before, the word "personally" can not limit or qualify the word "agent" in the statute) communicated by telephone, the solicitation would only be complete when the message was heard by the probable purchaser; and therefore the crime would be complete at the location occupied by the person solicited during the conversation. It has been held, as to telegrams, that damages accruing from the failure to deliver a message, though

recoverable at its destination, are due only to the sender, who may have been hundreds of miles away. What is said in *Loeb* v. *State,* 115 *Ga.* 241 (41 S. E. 575), does not conflict with what we now rule. It is true that the court in that case held the offense under §428 of the Penal Code to be personal solicitation of orders for the sale of intoxicating liquors; and counsel for the plaintiffs in error rely strongly upon the language used. When, however, the real issues involved in that case are taken into consideration, it clearly appears that what the Supreme Court said upon this subject was obiter. The point now before us was not before the court. If it had been, we doubt not that the same considerations which control our judgment would have addressed themselves with equal force to the judgment of the Supreme Court.

. 3. Unquestionably the State may punish for a crime committed through the mails as a medium, without in any sense impinging the undoubted right of the national government to control the mails. Freedom to use the mails does not extend to their use as a means of committing crime. In re Palliser, 136 U. S. 266 (34 L. ed. 514, 10 Sup. Ct. 1034), Justice Gray, delivering the opinion, after citing some cases in which it was held that the sender of a letter may be punishable at the place where he mailed it, says: "But it does not follow that he is not punishable at the place where the letter is received by the person to whom it is addressed; and it is settled by an overwhelming weight of authority that he may be tried and punished at that place, whether the unlawfulness of the communication through the post-office consists in its being a threatening letter (The King *v.* Girdwood, 1 Leach, 142, s. c. 2 East P. C. 1120; Esser's case, 2 East P. C. 1125), or a libel (The King *v.* Johnson, 7 East, 65, s. c. 3 J. P. Smith, 94; The King *v.* Burdett, 4 B. & Ald. 95, 136, 150, 170, 184; Commonwealth *v.* Vlanding, 3 Pick. 304 [15 Am. D. 214]; In re Buell, 3 Dillon, 116, 122), or a false pretense or fraudulent representation (Regina *v.* Leech, Dearsly, 642, s. c. 7 Cox Crim. Cas. 100; The Queen *v.* Rogers, 3 Q. B. D. 28, s. c. 14 Cox Crim. Cas. 22; People *v.* Rathbun, 21 Wend. 509; People *v.* Adams, 3 Denio, 190, and 1 N. Y. 173 [45 Am. D. 468]; Foute *v.* State, 15 Lea (Tenn.), 712)." In the Palliser case the defendant mailed a letter in New York, addressed to a postmaster in Connecticut, soliciting him to violate his official duty. In concluding the opinion, the court

held that "it might admit of doubt whether any offense against the laws of the United States was committed until the offer or tender was known to the postmaster and might have influenced his mind. But there can be no doubt at all that, if any offense was committed in New York, the offense continued to be committed when the letter reached the postmaster in Connecticut; and that, if no offense was committed in New York, an offense was committed in Connecticut; and that, in either aspect, the district court of the United States for the district of Connecticut had jurisdiction of the charge against the petitioner."

In the recent case of United States v. Thayer, 209 U. S. 39 (28 Sup. Ct. 426, 52 L. ed.), which was one of unlawful solicitation of campaign contributions, the Supreme Court of the United States, discussing the question of solicitation by letter, says: "The solicitation was made at some time, somewhere. The time determines the place. It was not complete when the letter was dropped into the post. If the letter had miscarried or had been burned, the defendant would not have accomplished a solicitation. . . To sum up, the defendant solicited money for campaign purposes; he did not solicit until his letter actually was received in the building; he did solicit when it was received and read there, and the solicitation was in the place where the letter was received. We observe that this is the opinion expressed by the civil service commission in a note upon this section, and the principle of our decision is similar to that recognized in several cases in this court. Re Palliser (Palliser v. United States ), 136 U. S. 257, 266 [34 L. ed. 514, 10 Sup. Ct. 1034] ; Horner v. U. S., 143 U. S. 207, 214 [36 L. ed. 126, 12 Sup. Ct. 407] ; Burton v. U. S., 202 U. S. 344, 387 [50 L. ed. 1057, 26 Sup. Ct. 688]." While the Thayer case is not identical with the case at bar, the following language very clearly sustains our view, and holds, not only that it is possible to solicit by letter as well as in person, but also that the offense of solicitation, if it be made an offense, is only complete when the letter has reached the addressee in the manner intended by the writer. It also, we think, settles the question that the United States mail can be the agent of him who solicits, and thereby establishes the proposition that even a mailman, delivering the letter, may be the agent of the writer, within the terms of §428, even if we were to hold, as contended for by counsel for plaintiffs in error,

that the solicitation must be made personally by an agent. In the Thayer case, supra, Justice Holmes, speaking for the court, says: "Of course it is possible to solicit by mail as well as in person. It is equally clear that the person who writes the letter and intentionally puts it in the way of delivery solicits, whether the delivery is accomplished by agents of the writer, by agents of the person addressed, or by independent middlemen, if it takes place in the intended way."

We think it clear, then, that the court of the place where the solicitation is completed by the delivery of the letter, in the way intended and by the agency selected by the defendants, would have jurisdiction of any crime growing out of the solicitation. Consequently, we hold that the solicitation by mail of orders for whisky or other intoxicants, to be filled for persons who live in counties where by law the sale of intoxicating liquors is prohibited, is violative of §428 of the Penal Code. See 9 Cyc. 297 and cit.; Palliser, Horner and Burton cases, supra. To sum up the matter: whether a solicitation is personal or by an agent is not dependent upon the personal presence of the solicitor, but upon whether the means of solicitation, whether oral or in writing, are used by an agent or by the principal himself. The solicitation of orders by mail, for the sale of intoxicating liquors, is personal solicitation, if the seller himself in person writes or mails the letter received by the prospective buyer. The venue of a crime committed by mail is at the point where the matter transmitted by mail is delivered and takes effect. Where a sale of intoxicating liquors is solicited by communication, written or printed, mailed in one State, as no crime is committed until the delivery of the letter in the State where such solicitation is forbidden, the county where the addressee receives such letter and gains knowledge of its contents has jurisdiction of such offense.

4. Counsel for plaintiffs in error argue that §428 of the Penal Code, as construed and applied by the lower court, gives the law extra-territorial effect, and is repugnant to the commerce clause of the Constitution of the United States. It is insisted that whisky and other intoxicating liquors are as much legitimate objects of commerce as any other articles which may be the subject-matter of barter and trade. Of course, when the subject of interstate commerce is to be considered, the rulings of the Supreme

Court of the United States upon this subject very properly should control; and for that reason we can not concur in the contention of counsel. In more than one case it has been held that the control of intoxicating liquors was a matter of police regulation, in regard to whose interchange a greater power had been delegated to the States than with reference to other articles of trade. In Pabst Brewing Co. *v.* Crenshaw, 198 U. S. 40 (49 L. ed. 925, 25 Sup. Ct. 552), Mr. Justice Brown states the well-known fact that the Wilson act was passed in consequence of the decision in Leisy *v.* Hardin, 135 U. S. 100 (34 L. ed. 128, 10 Sup. Ct. 681). In that case the State's statute prohibiting the sales of liquors was held to be unconstitutional as applied to the sale by the importer in original packages from another State. The decision in the Hardin case, supra, was put upon the ground that liquors had always been recognized by the commercial world as subjects of exchange, barter, and traffic. The Wilson act, 26 Stat. 313, c. 728, provided, "that all fermented, distilled, or other intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, sale or storage therein shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." The purpose of the Wilson act, as construed by the Supreme Court of the United States in Pabst Brewing Co. *v.* Crenshaw, supra, was to enlarge the powers of the States in respect to intoxicating liquors, so that upon their arrival in the State of their destination they should be subject to its police powers to the same extent and in the same manner as though such liquors had been produced within such State. As remarked by Justice Brown, "the primary, if not the sole, object of the Wilson act was to attach the prohibitory laws of the State as a police measure to liquors the moment they were delivered to the consignee, although they might still be in their original packages." The scope of the Wilson act is thus stated in re Rahrer, 140 U. S. 560 (35 L. ed. 572, 11 Sup. Ct. 865): "Congress has now declared that imported

liquors or liquids shall upon arrival in a State fall within the cate-. gory of domestic articles of similar nature."

The ruling in Rhodes v. Iowa, 170 U. S. 412 (42 L. ed. 1088, 18 Sup. Ct. 664), is not in conflict with the Rahrer case, the effect of the holding being merely that the Wilson act did not authorize the laws of Iowa to be applied to liquors while in transit from another State and before their delivery in Iowa. On the contrary, the ruling in the Rahrer case was reiterated, that liquors were divested of their character of articles of interstate commerce after their delivery in Iowa to the consignee. We think it clearly established that the Wilson bill puts intoxicating liquors, shipped into a State, within the police power of such State upon their arrival and delivery to the consignee, that such liquors do not stand upon the same footing as other articles of interstate commerce, and that any police measure that is a valid exercise of the police power of the State comes expressly within the purview of the Wilson bill. See also Vance v. Vandercook Co., 170 U. S. 438 (42 L. ed. 1100, 18 Sup. Ct. 674) ; American Express Co. v. Iowa, 196 U. S. 133 (49 L. ed. 417, 25 Sup. Ct. 182) ; Foppiano v. Speed, 199 U. S. 501 (50 L. ed. 88, 26 Sup. Ct. 138) ; Heyman v. So. Ry. Co., 203 U. S. 270 (51 L. ed. 178, 27 Sup. Ct. 104) ; Adams Express Co. v. Iowa, 196 U. S. 147 (49 L. ed. 424, 25 Sup. Ct. 185). To use the language of Justice White in the Pabst Brewing Co. case, supra, "Applying the Wilson act and the decisions thereunder to the statute here assailed, we think it clear that the contention that it is repugnant to the commerce clause of the constitution is without merit." It is within the power of each State either to regulate the sale of liquor or to prohibit it altogether in the exercise of its police power.

At the time of the passage of the act of 1893, from which the code section is taken, in numerous counties of Georgia prohibitory laws were effective, while in other counties the sale of intoxicating liquors was legalized. The act, therefore, at that time was only effective in those counties where prohibition was effective. Now it is effective throughout the State, by reason of the passage of the general prohibition bill, approved August 6, 1907. This difference, however, does not affect the validity of the police regulation provided by the act of 1893, but only goes to the scope of the territory affected. In either case it is a matter of police regulation, and if

it does not encroach upon Federal authority it is valid. As was held by the Supreme Court of Missouri, in the decision quoted in the Pabst case, so we hold that the act now in question, prohibiting the soliciting or taking orders for the sale of intoxicating liquors in any county where the same is prohibited, is a valid police regulation as to traffic which, it is conceded, the State of Georgia has the power to prohibit entirely. The purpose of the act was to make prohibition effective in each and any county where the sale of intoxicants was prohibited; and it is immaterial to the validity of the regulation whether such counties are few in number or included all the counties of the State. To use the language of the Supreme Court of the United States, "it necessarily results from this that the assailed law comes directly within the express terms of the Wilson act. . . This must be the case, since, as we have seen, the Wilson act, to use the words employed in re Rahrer, places liquor coming from another State, after its arrival, 'within the category of domestic articles of a similar nature.' To decide that an exertion by a State of its power to regulate the sale of malt liquors manufactured within the State was an exercise of its police authority, and yet to say that the same, when applied to liquor when shipped into the State from other States, after delivery, was not an exertion of the police power, would be to destroy the Wilson act, and frustrate the very object which it was intended to accomplish, and besides would overrule the previous decisions of this court upholding and enforcing that statute."

Counsel for the plaintiffs in error, however, argue that to hold that one may not by letter, from without the State, solicit orders for the sale of his liquors which are not in Georgia but are stored in Tennessee would be to affect traffic, in the article and operate to deter shipments to Georgia, and, therefore, that the statute must be treated as if it bore upon the liquor while still in transit as the subject of interstate commerce. A similar contention was made in the Pabst case, and the Supreme Court said in reference thereto, "this proposition simply amounts to contending that the Wilson act should be disregarded, since to enforce it would give the States power to regulate interstate traffic in liquor. If when a State has but exerted the power legally conferred upon it by the act of Congress its action becomes void as an interference with interstate commerce, because of the reflex or indirect influence arising from

the exercise of the lawful authority, the result would be that a State might exert its power to control or regulate liquor, yet if it did so its action would amount to a regulation of commerce and be void. And this would be but to say at one and the same time that the power could and could not be exercised. But the proposition would have a much more serious result, since to uphold it would overthrow the distinction between direct and indirect burdens upon interstate commerce, by means of which the harmonious working of our constitutional system has been made possible."

In insisting that negotiations leading up to an interstate sale of liquors are as much a part of interstate commerce as actual transit of goods, the learned counsel for plaintiffs in error lose sight of the fact that the Wilson bill has placed liquors upon a different plane from ordinary objects of interstate commerce. It is true, as a general rule, that "the negotiation in one State of sales of goods, which are in another State, for the purpose of their introduction into the former State, constitutes interstate commerce." 17 Am. & Eng. Enc. Law (2d ed.), 65. Upon this subject counsel for plaintiffs in error say, "if negotiations leading up to interstate traffic are subject to State regulation, there can be but little else left upon which the Federal constitution can act with profit;" and counsel proceed to argue that inasmuch as it is not a crime for a citizen of Georgia to negotiate for the purchase of liquor with a citizen of Tennessee who has liquor to sell, it can by no means be held to be unlawful for a citizen of Tennessee to negotiate with a citizen of Georgia for the sale of such liquor. This would be true, no doubt, as to any article of commerce except intoxicating liquors. As to intoxicating liquors, the identical question has been decided by the Supreme Court of the United States adversely to the contention of plaintiffs in error. In DeLamater v. South Dakota, 205 U. S. 93 (51 L. ed. 724, 27 Sup. Ct. 447), not only are all the other questions with reference to interstate commerce, which are involved in the present case, adjudicated, but, as to the particular point now under consideration, it is expressly held that, "although a State may not forbid a resident therein from ordering for his own use intoxicating liquors from another State, it may forbid the carrying on within its borders the business of soliciting orders for such liquor, although such orders may only contemplate a contract resulting from final acceptance in another State." In the opinion in that case, the

court says: "The proposition relied upon, therefore, when considered in the light of the Wilson act, reduces itself to this: Albeit the State of South Dakota had power within its territory to prevent the sale of intoxicating liquors, even when shipped into that State from other States, yet South Dakota was wanting in authority to prevent or regulate the carrying on within its borders of the business of soliciting proposals for the purchase of liquors, because the proposals were to be consummated outside of the State, and the liquors to which they related were also outside the State. This, however, but comes to this, that the power existed to prevent sales of liquor, even when brought in from without the State, and yet there was no authority to prevent or regulate the carrying on the accessory business of soliciting orders within the State. Aside, however, from the anomalous situation to which the proposition thus conduces, we think to maintain it would be repugnant to the plain spirit of the Wilson act. That act, as we have seen, manifested the conviction of Congress that control by the States over the traffic of dealing in liquor within their borders was of such importance that it was wise to adopt a special regulation of interstate commerce upon the subject. When, then, for the carrying out of this purpose the regulation expressly provided that intoxicating liquors coming into a State should be as completely under the control of a State as if the liquor had been manufactured therein, it would be, we think, a disregard of the purposes of Congress to hold that the owner of intoxicating liquors in one State can, by virtue of the commerce clause, go himself or send his agent into such other State, there, in defiance of the law of the State, to carry on the business of soliciting proposals for the purchase of intoxicating liquors. Passing from these general considerations, let us briefly more particularly notice some of the arguments relied upon.

"As we have stated, decisions of this court interpreting the Wilson act have held that that law did not authorize State power to attach to liquor shipped from one State into another before its arrival and delivery within the State to which destined. From this it is insisted, as none of the liquor covered by the proposals in this case had arrived and been delivered within South Dakota, the power of the State did not attach to the carrying on of the business of soliciting proposals, for until the liquor arrived in the

State there was nothing on which the State authority could operate. But this is simply to misapprehend and misapply the cases and to misconceive the nature of the act done in the carrying on the business of soliciting proposals. The rulings in the previous cases to the effect that, under the Wilson act, State authority did not extend over liquor shipped from one State into another until arrival and delivery to the consignee at the point of destination, were but a recognition of the fact that Congress did not intend, in adopting the Wilson act, even if it lawfully could have done so, to authorize one State to exert its authority in another State by preventing the delivery of liquor embraced by transactions made in such other State. The proposition here relied on is widely different, since it is that, despite the Wilson act, the State of South Dakota was without power to regulate or control the business carried on in South Dakota of soliciting proposals for the purchase of liquors, because the proposals related to liquors situated in another State. But the business of soliciting proposals in South Dakota was one which that State had a right to regulate, wholly irrespective of when or where it was contemplated the proposals would be accepted or whence the liquor which they embraced was to be shipped. Of course if the owner of the liquor in another State had the right to ship the same into South Dakota as an article of interstate commerce, and, as such, there sell the same in the original packages, irrespective of the laws of South Dakota, it would follow that the right to carry on the business of soliciting in South Dakota was an incident to the right to ship and sell, which could not be burdened without directly affecting interstate commerce. But as by the Wilson act the power of South Dakota attached to intoxicating liquors, when shipped into that State after delivery but before the sale in the original package, so as to authorize South Dakota to regulate or forbid such sale, it follows that the regulation by South Dakota of the business carried on within its borders of soliciting proposals to purchase intoxicating liquors, even though such liquors were situated in other States, can not be held to be repugnant to the commerce clause of the constitution, because directly or indirectly burdening the right to sell in South Dakota, a right which by virtue of the Wilson act did not exist."

It must be conceded, as insisted by counsel for plaintiffs in

error, that under the Wilson act, even in a prohibition State, a resident of that State has the right to contract for liquors in another State and receive the liquors in the State of his residence for his own use. But it does not follow from this that a dealer in the State of Tennessee may himself individually, or by means of the mails, or by circulars, or perhaps by advertisement in the newspapers, or by a traveling salesman, come into Georgia and carry on the business of soliciting from residents of this State orders for liquor, to be consummated by acceptance in the State of the non-resident dealer. To use the language of Justice White in the DeLamater case, "the premise is sound, but the error lies in the deduction, since it ignores the broad distinction between the want of power of the State to prevent a resident from ordering from another State liquor for his own use and the plenary authority of a State to forbid the carrying on in its borders of the business of soliciting orders for intoxicating liquors situated in another State, even although such orders may only contemplate a contract to result from final acceptance in the State where the liquor is situated. The distinction between the two is not only obvious but has been foreclosed by a previous decision of this court." The decisions upon statutes forbidding foreign insurance companies or their agents to make certain insurance contracts with citizens is then referred to by the Supreme Court, and the cases of Hooper v. California, 155 U. S. 648 (39 L. ed. 297, 15 Sup. Ct. 207); and Allgeyer v. Louisiana, 165 U. S. 578 (41 L. ed. 832, 17 Sup. Ct. 427), are cited, and the decision in Nutting v. Massachusetts, 183 U. S. 553 (46 L. ed. 324, 22 Sup. Ct. 238), is cited and analyzed. A portion of the decision of the Supreme Court of Massachusetts in the Nutting case is expressly adopted as follows: "While the legislature can not impair the freedom of McKie to elect with whom he will contract, it can prevent the foreign insurers from sheltering themselves under his freedom in order to solicit contracts which otherwise he would not have thought of making. It may prohibit not only agents of the insurers, but also brokers, from soliciting or intermeddling in such insurance, and for the same reasons." Nutting v. Massachusetts, 175 Mass. 156 (55 N. E. 895). The ruling of the Supreme Court in the DeLamater case, supra, prevents the plaintiffs in error, or any other non-resident dealers in liquors, from sheltering themselves

under the freedom of a citizen of Georgia to buy, in order to solicit contracts which, but for the attractive and glaring circulars which may be sent by mail, he would not have thought of making. The Massachusetts ruling, as Justice White in the DeLamater case, supra, says, "is particularly pertinent to the subject of intoxicating liquors and the power of the State in respect thereto. As we have seen, the right of the States to prohibit the sale of liquor within their respective jurisdictions in and by virtue of the regulation of commerce embodied in the Wilson act is absolutely applicable to liquor shipped from one State to another after delivery and before the sale in the original packages. It follows that the authority of the States, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete as is their right to regulate within their jurisdiction the making of contracts of insurance. It hence must be that the authority of the States to forbid agents of non-resident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors, which otherwise the citizen of the State 'would not have thought of making,' must be as complete and efficacious as is such authority in relation to contracts of insurance, especially in view of the conceptions of public order and social well-being which it may be assumed lie at the foundation of regulations concerning the traffic in liquor."

In passing, we may say that the suggestion was made, in the argument, that certain constitutional questions should be certified to the Supreme Court. Upon a careful examination of the demurrer we find that no such questions are made. Apart from the fact that no constitutional question is presented with that particularity and definiteness required by the decisions of the Supreme Court and of this court, it is clear that at most the demurrer raises only the question whether, for this court to give to §428 of the Penal Code the extension and construction which we have just given, would be to impinge upon the exclusive powers of Congress in the regulation of interstate commerce, as conferred by the Federal constitution. We have repeatedly held that a point of this kind does not present any such direct attack upon the constitutionality of the statute as to require certification. There are many constitutional questions which it is within the power of this court to decide. While our jurisdiction in that respect is limited, we

are not forbidden all cognizance of constitutional law.  The clause in the constitutional amendment creating this court which requires certification of certain questions is necessarily limited by the concurrent constitutional provisions that the decisions of the Supreme Court of the United States upon Federal questions, and the precedents of the Supreme Court of Georgia upon State constitutional questions, are to be applied by this court.  Consequently, we have held that where the immediate constitutional question has been directly passed upon either by the Supreme Court of this State or of the United States, such question would not be certified.  Upon these propositions see *Fews* v. *State,* 1 *Ga. App.* 122 (58 S. E. 64) ; *Hammock* v. *State,* 1 *Ga. App.* 127 (58 S. E. 66) ; *Anderson* v. *State,* 2 *Ga. App.* 18 (58 S. E. 401) ; *Walker* v. *Swift Fertilizer Works,* 3 *Ga. App.* 283 (59 S. E. 850).

6.  For the reasons stated in *Southern Express Co.* v. *State,* 1 *Ga. App.* 700 (58 S. E. 67), a corporation, being responsible for the acts of its agent, is indictable and punishable just as a natural person would be for any unlawful act done by any of its servants as its agent and with its consent, if the act done by such servant in the conduct of the corporation's business is forbidden by law and its commission is punishable as a crime.  For this reason the trial judge did not err in overruling the demurrer interposed by the R. M. Rose Company, setting up the fact that it was a corporation.

The real question in the cases turns on whether the soliciting of sales of liquors can be a crime.  Is the solicitation crime, or legitimate commerce?  If the State of Georgia has the power, as held by the Supreme Court of the United States, to make the soliciting of orders for intoxicating liquor a crime, as a measure of police regulation, then he who uses any agency to violate that law with success may be guilty of that crime.  And his guilt or innocence is not affected by the fact that the solicitation is by letter,—that such an one used the mail as his medium of communication and action,—any more than if the case was one of sending a threatening letter, a challenge to fight a duel, a circular in regard to a lottery or soliciting campaign contributions, or asking a postmaster to sell stamps upon a credit, or than if the case were even of murder, where the package which caused death was conveyed by mail.                    *Judgment affirmed.*