[No. 9774.   Department Two.   March 28, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES L. HOLMES, *Appellant*.[1]

INTOXICATING LIQUORS—OFFENSES—ILLEGAL SALES—LOCAL OPTION LAW—SOLICITING ORDERS—STATUTES—CONSTRUCTION.   Under Rem. & Bal. Code, § 6303, prohibiting the giving away or delivery of intoxicating liquor by any storekeeper, or the taking or soliciting of orders for a sale, in a dry unit, one may be guilty of taking or soliciting orders without being a "storekeeper."

SAME—SOLICITING ORDERS—PLACE OF COMMISSION OF OFFENSE—MAILING LETTER.   A dealer who wrote and mailed a letter in a license city, addressed to a person in a dry district, quoting prices of liquors which it agreed to deliver at the party's address in the dry unit, and enclosing an order blank with return envelope, is guilty of taking or soliciting orders for the sale and delivery of liquors within the limits of a dry unit, within the meaning of Rem. & Bal. Code, § 6303; since the unlawful act was committed in the city where the letter was delivered.

SAME—COMMERCE.   In such case, both cities being in this state, no question of interstate commerce is involved.

CRIMINAL LAW—TRIAL—JURY TRIAL—DIRECTING VERDICT.   In a criminal prosecution, it is error for the court to direct a verdict of guilty; since Const., art. 1, § 22, guarantees the accused the right to trial by jury, and Rem. & Bal. Code, § 2309, provides that no person shall be convicted of crime unless by admission in his plea, confession in open court, or by the verdict of a jury.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered May 18, 1911, upon a trial of soliciting orders for the sale and delivery of liquor in a dry unit in violation of the local option law, upon a verdict directed by the court.   Reversed.

*Coleman, Fogarty & Anderson*, for appellant.

*Ralph C. Bell*, for respondent.

[1]Reported in 122 Pac. 345.

CROW, J.—The defendant was convicted on an information the charging part of which reads as follows:

"On or about the 20th day of March, 1911, in the county of Snohomish, state of Washington, the said defendant, Charles L. Holmes, under the name and style and designation of 'Seattle Supply Company' and 'Seattle Supply Co.,' did unlawfully in the city of Everett, said county and state, a unit in which the sale of intoxicating liquor was then and there prohibited and unlawful, solicit the order of one W. F. Swalwell for the sale and delivery of intoxicating liquor to said W. F. Swalwell, by depositing in the United States mail at Seattle, in the county of King, state of Washington, and thereby causing to be delivered to said W. F. Swalwell in said city of Everett, a letter and envelope addressed to said W. F. Swalwell, containing a self addressed return envelope, an order blank and other written and printed matter soliciting the order of said W. F. Swalwell for the sale and delivery of such intoxicating liquor, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Washington."

From the final judgment entered on the verdict, this appeal has been taken.

The prosecution is based upon Rem. & Bal. Code, § 6303, the same being § 12 of the local option law, chapter 81, Laws 1909, p. 161. Upon the trial, a written stipulation of the parties was offered by the state and admitted in evidence. From this stipulation, the following material facts appear: That on March 20, 1911, the appellant, under the name and style of the Seattle Supply Company, was engaged in the sale of intoxicating liquors at 84 Yesler Way, in Seattle, King county, Washington; that the city of Seattle was a unit in which the sale of intoxicating liquors was then permitted by law; that the city of Everett, in Snohomish county, was a unit in which the sale of intoxicating liquors was then unlawful; that on March 20, 1911, the appellant deposited in the post office at Seattle, Washington, a printed letter or circular, inclosed in a plain envelope, postage prepaid, and addressed, "W. F. Swalwell, Everett, Washington;" that the

letter was received by Swalwell at Everett; that its material portions read as follows:

"Liquors of Quality.

"We have made arrangements to make deliveries at places of residence or private apartments in hotels and lodging houses of any liquors ordered through us. Carrying the largest stock of imported and domestic liquors in Seattle, you can depend on our having on hand any particular brand that you may wish. We pay all delivery charges and it costs us as much to deliver one bottle as it does to make delivery of five gallons. [Here follows a detailed list of numerous brands of whiskies, brandies, wines and gins with prices of each by the bottle or gallon.] We carry all brands of Swedish Liquors, Scotch and Irish Whiskies, all brands of Imported and Domestic Champagnes, Mineral Waters; in fact, everything known to the up-to-date wholesale liquor dealer, and will be pleased to furnish special prices on application. In ordering be sure to give residence address, as we cannot make deliveries to places of business, neither can we make c. o. d. deliveries, therefore enclose remittance with order. If goods are not satisfactory in every way, we will cheerfully refund your money. All of our goods are full measure and guaranteed under the pure food law to be absolutely pure.

"We ship in plain cases, no marks to show contents.

"A case consists of four full quarts and may be all of one kind or assorted.

"References: First National Bank, Seattle; Dun or Bradstreet's Commercial Agencies.

"Seattle Supply Co.,
"84 Yesler Way, Seattle, Wash."

and that the envelope thus addressed to Swalwell had inclosed therein a printed order blank and a return envelope with the printed address thereon, "Seattle Supply Company, 84 Yesler Way, Seattle." After introducing this stipulation, the state rested without offering further evidence. Thereupon the appellant moved for a directed verdict of acquittal, which motion was denied, and the trial judge instructed the jury as follows:

"Gentlemen of the jury: You are instructed that there are no contested questions of fact in this case. The facts

are stipulated and there is no controversy about the facts, and, by reason of the law, I instruct you that it is your duty to find the defendant guilty and a form of verdict will be handed to you in a few minutes."

Appellant contends the trial court erred in overruling his demurrer to the information and in denying his motion for a directed verdict of acquittal. Section 6303, *supra*, reads as follows:

"The giving away, delivering or handling of any intoxicating liquor by any storekeeper at any place of business, or the taking or soliciting of orders, or the making of agreements for the sale or delivery, or for the giving away, of any intoxicating liquor within the limits of a unit which shall have voted against licensing the sale of intoxicating liquor therein, or any other device to evade the provisions hereof, shall be deemed an unlawful sale of intoxicating liquor, and any person guilty thereof shall be punished as provided in the preceding section."

Appellant insists that the only class of persons mentioned are storekeepers; that the information nowhere charges he was a storekeeper, and that it is therefore insufficient. The purpose of the section is to define unlawful sales of intoxicating liquors in dry units, and the clause referring to storekeepers is a part of but one of several definitions. The section also defines a sale as the act of taking or soliciting orders for intoxicating liquors within the limits of a unit which shall have voted against license. If appellant did, on March 10, 1911, solicit an order for intoxicating liquors in the city of Everett, a dry unit, he was guilty of a violation of this section without regard to the question whether he was then a storekeeper.

Appellant, however, contends that the acts charged do not constitute a solicitation of orders in dry territory. If his purpose as charged in the information and disclosed by the evidence was not to solicit orders for intoxicating liquors in a dry unit, it would be difficult to determine what it was. Sale prices were given, an order blank and return envelope

were inclosed, the letter requested the person to whom it was addressed to state his residence when ordering, as the Seattle Supply Company could not make deliveries at places of business, and it further requested a remittance with orders, as deliveries could not be made c. o. d. The methods thus adopted and used by appellant disclose a studied effort to avail himself of some subterfuge by which he could evade the prohibitions and penalties of the local option law. The intention of the legislature to prevent all forms of sale other than those expressly permitted by the terms of the statute itself is so apparent and its various definitions of the term "sale" are so clear, that it would be inexcusable for any court to hold that the scheme for soliciting orders would not be a sale as defined and prohibited by the statute.

Appellant further contends the information is insufficient because the statute makes it an offense to solicit orders for intoxicating liquors in a dry unit, in violation of the commerce clause of the constitution of the United States. No interstate commerce is involved in this action. Appellant mailed the letter in Seattle, addressed to Swalwell at Everett. Both cities are in this state. Any order he might have obtained would involve intra-state commerce only. The principles involved in this and every other point raised by appellant touching the construction and validity of the statute are discussed by the Georgia court of appeals in a similar case in *Rose v. State*, 4 Ga. App. 588, 62 S. E. 117, later reversed by the Georgia supreme court (*Rose Co. v. State*, 133 Ga. 353, 65 S. E. 770), upon the sole ground that a criminal accusation in the state of Georgia charging a defendant who lived in Tennessee with having solicited orders for the sale of intoxicating liquors in Georgia, by means of a circular sent through the United States mails to a person living in Georgia, did not state a crime, as the Georgia statute under which the defendant was prosecuted conflicted with the commerce clause of the constitution of the United States and was invalid. We conclude that, in thus holding, the su-

preme court of Georgia adopted a strained and unwarranted construction of the act of Congress of August 8, 1890, chapter 728, 26 Stat. L. 313, known as the Wilson act, and failed to grasp the legitimate effect of the opinion of the supreme court of the United States in *Delamater v. South Dakota,* 205 U. S. 93, construing that act. The *Delamater* case and the Wilson act had been reviewed and discussed by the court of appeals in its opinion, 4 Ga. App. 588, 62 S. E. 117, *supra,* which may be consulted with much profit. Upon every point discussed, we regard that opinion as logical, unanswerable, and well sustained by authority. Its reasoning and conclusions, which we approve and adopt when applied to the facts in this case, not only support the proposition that appellant's act was an unlawful solicitation of orders for intoxicating liquors in a dry unit, but are also convincing to the effect that such unlawful act was committed in the city of Everett where appellant's letter was received by Swalwell. The trial court properly overruled the demurrer to the information and the motion for a directed verdict of acquittal. *Rose v. State,* 4 Ga. App. 588, 62 S. E. 117; *State v. Bass Pub. Co.,* 104 Me. 288, 71 Atl. 894, 20 L. R. A. (N. S.) 495; *Zinn v. State,* 88 Ark. 273, 114 S. W. 227.

Appellant further contends the trial court erred in directing the jury to return a verdict of guilty. This contention must be sustained. Section 22, art. 1, of the state constitution guarantees to the accused in a criminal prosecution the right to a speedy trial by an impartial jury. Section 2309, Rem. & Bal. Code, provides that:

"No person informed against or indicted for a crime shall be convicted thereof, unless by admitting the truth of the charge in his plea, by confession in open court, or by the verdict of a jury, accepted and recorded by the court."

If a trial judge may be permitted to direct a verdict of guilty in a criminal prosecution, the conviction is his act,

and not the verdict of a jury. In *Sparf and Hansen v. United States*, 156 U. S. 51, 105, the court said:

"We have said that, with few exceptions, the rules which obtain in civil cases in relation to the authority of the court to instruct the jury upon all matters of law arising upon the issues to be tried, are applicable in the trial of criminal cases. The most important of those exceptions is that it is not competent for the court, in a criminal case, to instruct the jury peremptorily to find the accused guilty of the offence charged or of any criminal offence less than that charged. The grounds upon which this exception rests were well stated by Judge McCrary, Mr. Justice Miller concurring, in *United States v. Taylor*, 3 McCrary 500, 505. It was there said: 'In a civil case, the court may set aside the verdict, whether it be for the plaintiff or defendant, upon the ground that it is contrary to the law as given by the court; but in a criminal case, if the verdict is one of acquittal, the court has no power to set it aside. It would be a useless form for a court to submit a civil case involving only questions of law to the consideration of a jury, where the verdict, when found, if not in accordance with the court's view of the law, would be set aside. The same result is accomplished by an instruction given in advance to find a verdict in accordance with the court's opinion of the law. But not so in criminal cases. A verdict of acquittal cannot be set aside; and therefore, if the court can direct a verdict of guilty, it can do indirectly that which it has no power to do directly.' "

The trial court erred in directing a verdict of guilty. For this error the judgment is reversed, and the cause remanded for a new trial.

CHADWICK, MORRIS, and ELLIS, JJ., concur.