[No. 22535. Department One. March 31, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. IVER
CHRISTIANSEN, *Appellant*.[1]

*Sam L. Levinson,* for appellant.

*Charles R. Denney* and *Francis W. Mansfield,* for
respondent.

MITCHELL, J.—The appellant, Iver Christiansen, was
charged with the crime of assault in the first degree,
in that in the county of Snohomish, Washington, on

[1]Reported in 297 Pac. 151.

July 2, 1929, he did "wilfully, unlawfully and feloniously" assault Olaf Ronnej, by shooting at and toward him with a pistol with intent to kill. Appellant pleaded not guilty, and upon trial by a jury, was found guilty of assault in the second degree, and has appealed from a judgment on the verdict.

The shooting occurred at the home of Mrs. Christiansen and two minor children on a farm. She and the appellant were divorced about two years before, the two children being awarded to her. Olaf Ronnej owned a place about one-half mile away and for some time had been taking meals at the home of Mrs. Christiansen.

One of the principal assignments of error in the case, and the one upon which we dispose of the appeal, relates to the testimony of the appellant, brought out in examination and cross-examination, in substance as follows:

He and his divorced wife were married in 1916, to which marriage the two children were born. He had trouble with Ronnej on account of appellant's wife. At and about the time of the shooting, appellant worked in the Sunset Copper mines, and bought the revolver in question about a month before the shooting. He came down to Everett one evening, and the next morning went out to the home of Mrs. Christiansen, about half past five, about daylight. He testified that his purpose in going there was "to see my kids, to look after them and see if my wife and Olaf took care of them."

He walked around the house two or three times and about a quarter past six Mrs. Christiansen came out of the milk house, went around and into the dwelling house through the front door. In about fifteen minutes Ronnej came out of the front door of the milk house and went into an outdoors toilet. Appellant went over

and stood five to ten feet from the door of the toilet, and when Ronnej opened the door appellant said to him, "I see you are here again." To which Ronnej replied, "Yes, I am here and I am going to stay here. You get out of here," putting his hand to his back pocket and "made an action like he had a gun himself," at which time appellant drew his own gun. Thereupon Ronnej closed the door with his left hand and dropped down on or about two feet from the floor.

Appellant, not meaning to strike Ronnej, as he testified, fired two or more shots, four and one-half or five feet high, into the upper portion of the door (knowing at that time, as he testified, that Ronnej was on the floor), another shot was fired into the roof of the building, at about which time his former wife came out, struck his pistolhand downward, causing one shot to strike the door close to the doorjamb. He testified that "she [Mrs. Christiansen] hit the gun and that was the time she got the burn on her fingers." That he reloaded his gun and fired two shots into the air.

About that time, while appellant was talking to his former wife, Ronnej came out and started around the house, appellant following and kicking at, but not striking him, and that he drove or chased him out to the road and that he didn't care then where he went. In denial of a portion of the testimony in chief on behalf of the state, he testified that he did not shoot at Ronnej going from the house to the road. That Ronnej first told him to get out; that each was trying to chase the other away and that he, appellant, succeeded.

The statutes involved provide as follows (Rem. Comp. Stat., § 2413):

"Every person who, with intent to kill a human being, . . .

"(1) Shall assault another with a firearm or any deadly weapon or by any force or means likely to pro-

duce death; . . . shall be guilty of assault in the first degree. . . ."

and Rem. Comp Stat., § 2414:

"Every person who, under circumstances not amounting to assault in the first degree . . .

"(4) Shall willfully assault another with a weapon or other instrument or thing likely to produce bodily harm; . . .

"Shall be guilty of assault in the second degree. . . ."

The question in the case is not whether the testimony of the appellant, or all there was in the case, was sufficient to sustain a verdict against the appellant, but whether he had a fair trial. The court gave rather elaborate instruction covering, in the usual manner and form, most of the matters involved in the trial by jury of criminal cases, but instructions were given which, after defining the statutory offenses of assault in each the first and second degree, said:

"Under the evidence given by the defendant in this case and that one's own voluntary admissions when upon the witness stand, the defendant is guilty of assault in the second degree, in that he testified under oath that he did wilfully assault one Olaf Ronnej with the firearm in evidence when such was loaded with powder and ball. There is no claim of self defense or any attempt at justification as a lawful use of force toward another which would entitle defendant to be found not guilty.

"The ultimate and final question for you to determine is whether it is proven beyond a reasonable doubt that such assault was made with the then present intent on the part of defendant to kill said Olaf Ronnej, rather than as defendant asserts, merely to scare or frighten such one.

"If you shall be so convinced after full and fair consideration of all the evidence in the case and all the circumstances you may deem proven, that there was the then present intent to kill, you will find defendant

534

guilty of assault in the first degree, otherwise you will find him guilty of assault in the second degree.''

Appellant duly excepted and contends that such instructions violate Art. 4, § 16, of the state constitution, which says: ''Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.'' And contends further that the instructions violate Art. 1, § 22, of the state constitution guaranteeing to one accused of crime the right to a speedy public trial by an impartial jury. Both of these contentions, in our opinion, must be sustained.

By the instructions, it is to be observed that the trial judge told the jury that the defendant

'' . . . is guilty of assault in the second degree, in that he testified under oath that he did wilfully assault one Olaf Ronnej with the firearm in evidence when such was loaded with powder and ball.''

The jury was thus relieved from responsibility, and, upon final submission of the case to them, promptly brought in a verdict accordingly.

Still further, the court, upon commenting on the evidence and advising the jury that there was no claim of self-defense or attempt at justification, denied to the jury thereby, in our opinion, the right to use its own judgment with reference to appellant's testimony that Ronnej made a threat against appellant, followed by a movement as if he were attempting to draw a gun. Still further in the instructions, and after having so shortly told the jury that the defendant was guilty of assault in the second degree, the jury was told that the ultimate and final question for them to determine was whether it was proven beyond a reasonable doubt that such assault was made with the then present intent to kill Ronnej, rather than, as defendant claimed, merely to scare or frighten him.

Under the statute the court had just referred to,

the defendant would be guilty, if at all, of assault in the first degree, if, at the time of making it, he intended to kill; and besides, why submit that question to the jury as the ultimate or other kind of question, if the defendant was guilty of assault in the second degree, as the court had already instructed the jury?

■ And, finally, in continuation of the conflict and confusion, there was submitted to the jury the right to find one of only two verdicts, assault in the first degree or assault in the second degree, and thereby necessarily denied to the jury the power or right to bring in a verdict of not guilty.

In our opinion, the denial to a jury of the right and power to bring in a verdict of acquittal in a criminal case is to effectually deny to the one being tried the right of trial by jury.

In support of the conclusion we reach that these instructions were prejudicially erroneous, we cite, in addition to the plain provisions of the constitution already mentioned, and without any attempt at analysis, which we believe to be unnecessary, the cases of *State v. Holmes,* 68 Wash. 7, 122 Pac. 345; *State v. Warwick,* 105 Wash. 634, 178 Pac. 977, and *State v. Dale,* 110 Wash. 181, 188 Pac. 473.

■ Counsel for the state, contending that appellant's testimony amounted to a confession in open court, claims that the conviction was proper, irrespective of the instructions complained of, under Rem. Comp. Stat., § 2309, which provides:

"No person informed against or indicted for a crime shall be convicted thereof, unless by admitting the truth of the charge in his plea, by confession in open court, or by the verdict of a jury, accepted and recorded by the court."

That statute was quoted in the case of *State v. Holmes,* 68 Wash. 7, 122 Pac. 345, and held not suffi-

cient to void the error of a directed verdict, although facts sufficient to constitute a crime were stipulated in writing at the trial of that case. Attempt is made by the prosecution to distinguish that case from this one, because there the stipulation as to the facts was signed, not by the defendant, but by his attorneys, and for the further reason that the defendant was not personally present in court. The decision, however, was reached without reference to those considerations, and put upon the broad ground that, upon the general plea of not guilty, the defendant was entitled to a jury trial, and, being tried by a jury, the court had no right to convict him by directing a verdict of guilty. The principle involved in that case applies here.

The statute is silent as to the form and manner of a confession in open court, but, manifestly, it means something different from what occurred in this case. The judgment here does not purport to rest upon a confession in open court, but upon the verdict of the jury. The testimony of the appellant, erroneously claimed to be a confession, was never intended nor offered by him or his counsel as a confession in open court, so as to give the court power to decide the issue rather than leave it to the jury, according to the defendant's constitutional right, which he had in no way waived. His testimony was elicited in the usual way, partly by examination and partly by cross-examination, each of about the same volume and not fully understood without consideration of all of it.

For the purposes of a fair and impartial trial by jury in a criminal case, the unfavorable opinion of the trial judge as to the weight of defendant's testimony, such as was brought out here under rather lengthy examination and cross-examination, is not the equivalent of a confession in open court—the trial judge is not the trier of the facts.

There are other assignments of error insisted upon by the appellant, which, upon examination, we find are so peculiar to the trial had, and so surely will not occur again, that we find it unnecessary to discuss them.

On account of prejudicial error in the instructions complained of, the judgment appealed from is reversed, and the cause remanded with directions to the trial court to grant a new trial.

TOLMAN, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.