[No. 2567.  Decided September 7, 1897.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT
DOLAN, *Appellant*.

ASSAULT WITH INTENT TO KILL — INSTRUCTIONS — CONVICTION OF LESSER
OFFENSE — INTOXICATION AS A DEFENSE — EVIDENCE.

An instruction that malice includes not only anger, hatred
and revenge, " but any other unlawful and unjustifiable motive,"
is not prejudicial, when the succeeding portions of the charge
immediately qualify and explain such definition by adding that,
 a thing done with a wicked mind and attended with such cir-
cumstances as plainly indicate a heart regardless of social duty
and fully bent on mischief indicates malice within the meaning
of the law."

An instruction is misleading and liable to confuse a jury as
to the distinction between murder and manslaughter, when it
charges " that, if without such provocation as is apparently suffi-
cient to excite reasonable apprehension, a person shoots another
in such a way as is likely to occasion death, although he had
no previous malice against the person, yet he is presumed to
have had such malice at the moment of shooting, and if death
results from such shooting it will be murder."

In a prosecution for an assault with intent to murder, the
intent, as well as the assault, is a necessary element of the crime,
and cannot be inferred as a legal presumption from the use of a
deadly weapon; consequently an instruction is erroneous in such
a case which charges that if the defendant did shoot the prosecut-
ing witness and that the natural and ordinary consequences of
such shooting would be the death of the person assaulted, then
the presumption of law is that the shooting was done with intent
to kill.

In a prosecution for assault with intent to commit murder,
it is error to refuse a requested instruction to the effect that the
jury may, in case the evidence warrants it, find the defendant
guilty of assault, or of assault and battery, since Code Proc.,
§ 1320, provides that a defendant may be found guilty of any
offense necessarily included within the crime charged.

Where a witness has testified as to seeing defendant intox-
icated and as to his condition, appearance and action at the time
he noted him in such state of intoxication, the witness is com-

17  499
20  164

17  499
22  276

17  499
32  306

17  499
36  147

17  499
e39 205

17  499
41  243
d41 244
e41 246
41  248
d41 249
d41 250

petent to testify as to the extent of the intoxication and state whether defendant appeared to be so intoxicated that he did not know what he was doing.

While voluntary intoxication is not an excuse for a crime actually committed, yet where a crime consists of an act and of an intent to perform an ulterior act, which was in fact not accomplished, intoxication of the accused may be considered in determining whether he actually entertained the specific intent charged.

Appeal from Superior Court, King County.—Hon. T. J. HUMES, Judge. Reversed.

*R. R. George,* and *George E. de Steiguer,* for appellant. *James F. McElroy,* Prosecuting Attorney, and *John B. Hart,* for The State.

No state of mind resulting from drunkenness, short of actual insanity or loss of reason, is any excuse for the commission of a criminal act. *State v. Coleman,* 27 La. An. 691; *Beasley v. State,* 50 Ala. 149 (20 Am. Rep. 292); *State v. Thompson,* 12 Nev. 140; *Fitzpatrick v. People,* 98 Ill. 270; *Colbath v. State,* 2 Tex. App. 392; *Estes v. State,* 55 Ga. 31; 1 Wharton, Criminal Law, § 32.

The opinion of the court was delivered by

ANDERS J.—Appellant was tried and convicted upon an information charging him with assaulting and shooting one James M. Snyder with intent to commit murder. The information was based upon § 22 of the Penal Code, which provides that an assault with intent to commit murder, rape, the infamous crime against nature, mayhem, robbery or grand larceny shall subject the offender to imprisonment in the penitentiary for a term of not less than one year nor more than fourteen years. It appears from the bill of exceptions that at the time of, and for some days preceding, the alleged commission of the offense charged in the

information, the appellant Dolan was employed as a waiter in the restaurant owned and conducted by the said Snyder in the city of Seattle; that upon the afternoon and evening of the day on which said offense was alleged to have been committed, the said Dolan had been drinking intoxicating liquors frequently and heavily; that during the course of the evening he left said restaurant, after having left therein certain orders to be filled at a neighboring lodging house; that, having remained away a considerable length of time, the said Snyder, about ten o'clock, left said restaurant for the purpose of finding appellant, and did find him, in company with other persons, including one D. F. Phelps, in a room in a lodging house near to said restaurant, appellant then being much intoxicated; that said Snyder immediately took charge of said appellant and proceeded to conduct him back to the restaurant heretofore mentioned; that upon entering said restaurant the said Dolan without any talk or conversation with said Snyder immediately preceding, said to said Snyder, "If you give me any trouble I will shoot you," and thereupon drew a revolver from his pocket and shot said Snyder in the mouth; that there had been no previous quarrel, trouble or altercation of any kind between said Snyder and said Dolan, and previous to said statement made by said Dolan referred to, and there was no proof of any threats made by said Dolan toward said Snyder, nor of any ill will between said Snyder and said Dolan. Said Phelps having been called as a witness on the part of the state, testified upon cross-examination that at the time and immediately before the defendant was conducted from the room in said lodging house as above stated, by said Snyder, the defendant "was crazy drunk," and that "there was a wild and crazy look in his eyes;" that thereupon defendant by his counsel propounded to Phelps the following question:

" State whether or not the defendant Dolan then appeared to be so intoxicated that he did not know what he was doing? "  To which question the state then and there objected on the ground that the same was irrelevant, immaterial and incompetent, which objection was then and there sustained by the court, to which ruling of the court defendant by his counsel then and there excepted, and said exception was allowed by the court.   It also appears from the testimony of said Phelps that within about half an hour before said defendant was conducted from said room by said Snyder as aforesaid the defendant drank the better part of two pint bottles of whiskey; and one Doyle, a witness for the defendant, testified that upon the evening of the commission of the alleged offense, he was tending bar in the saloon underneath the lodging house above referred to; that immediately prior to going to said lodging house the defendant came into said saloon and ordered some bottles of liquor and glasses, and attempted to carry them from said saloon; that the defendant was then very much intoxicated, and was intoxicated to such an extent that he was unable to walk erect and fell prostrate upon the floor with his waiter, bottles and glasses.   Defendant was also sworn in his own behalf and stated that he had no recollection of stating to the said Snyder that he would shoot him if he gave him any trouble, or making any such statement in substance, and further stated that he did not have at any time any ill will toward said James M. Snyder, and never at any time attempted to kill him.   After the conclusion of the evidence and after the argument of counsel the court charged the jury as follows: (We number the respective paragraphs for more convenient reference.)

" 1.  Gentlemen of the jury:  The information in this case charges the defendant with the crime of assault with intent to commit murder.   The court instructs you that in

order to justify a verdict of guilty of the crime here charged, the facts and circumstances proved in the case must be such that had death resulted from the shooting the jury would have found the defendant guilty of murder. Under the law of this state, every person who purposely and maliciously kills another is guilty of murder. The questions you have to answer in this case from the evidence are, first: Did the defendant purposely and maliciously shoot the prosecuting witness, James M. Snyder with a revolver pistol. Second: If he did, did he so shoot with intent to kill and murder the prosecuting witness? Third: Did the transaction take place in this county and state, within the three years last past? If all these questions are answered in the affirmative by you and you are satisfied of the truth, beyond a reasonable doubt, you will find the defendant guilty. If you answer any or all of these questions in the negative, you will acquit the defendant. Purposely, means on purpose—intentionally. Malice, the court instructs you, includes not only anger, hatred, revenge, but any other unlawful and unjustifiable motive. It is the intent to denote an action flowing from any wicked corrupt motive; a thing done with a wicked mind and attended with such circumstances as plainly indicate a heart regardless of social duty and fully bent on mischief indicates malice within the meaning of the law. Hence malice is implied from any deliberate and cool act against another, however sudden, which shows an abandoned and malignant heart.

" 2. You are instructed that if without such provocation as is apparently sufficient to excite reasonable apprehension, a person shoots another in such a way as is likely to occasion death, although he had no previous malice against the person, yet he is presumed to have had such malice at the moment of shooting, and if death results from such shooting it will be murder.

" 3. You are instructed that the natural and probable consequences of every act deliberately done by a person of sound mind are presumed to have been intended by the author of such act; and if the jury find from the evidence in this case, beyond a reasonable doubt, that the defendant did shoot the prosecuting witness as charged in the informa-

tion, and that the natural and ordinary consequences of such shooting would be the death of the said James M. Snyder, then the presumption of law is that the defendant did shoot the said Snyder with intent to kill him and that the shooting was done with malice as explained in these instructions, you should find the defendant guilty of an assault with intent to commit murder. The intent with which the defendant shot, if you find he did shoot, is a necessary element in the case, but direct and positive testimony is not necessary to prove the intent. It may be inferred from the evidence if there are any facts proved, which satisfy the said jury beyond a reasonable doubt of its existence.

" 4. The court instructs you that if you believe from the evidence that at the time of the alleged assault the defendant was so intoxicated or besotted with drink that he was incapable of understanding what was right and what was wrong, incapable of forming any intent to kill, then you will find the defendant not guilty of the crime of assault with intent to commit murder. On the other hand, if you believe that the defendant shot as charged, that at the time he fired the shot he comprehended what he was doing, understood the nature of his act, well knew it was wrong, and prohibited by law, you will not acquit on the ground of drunkenness.

" 5. Again, gentlemen, the law is, that if a person is assaulted in such a way and under such circumstances as to cause the person assaulted to honestly believe that he is in danger of receiving great bodily harm, the person is justified in defending himself, even to the extent of using a deadly weapon; so in this case, if you believe that the defendant was assaulted by the prosecuting witness, James M. Snyder, in such a way and under such circumstances as to cause the defendant to honestly believe that he was in danger of receiving great bodily harm, his life was in danger, the defendant was justified in defending himself under such circumstances, but the circumstances must have been such as to cause him to believe honestly that he was in danger of receiving great bodily harm at the hands of

the defendant and that he shot in the honest belief that it was necessary to defend himself.

" 6. The burden of proof is upon the state. Each and every element of the crime charged must be proved to your satisfaction beyond a reasonable doubt before you can find the defendant guilty.

" 7. You, gentlemen, are the sole judges of the facts in the case. You are also the sole and exclusive judges of the degree of credit you will give to the testimony of the witnesses who have testified before you."

Appellant's first objection to the instructions of the court to the jury is that the court erred in stating to the jury in the first paragraph thereof that malice "includes not only anger, hatred and revenge, but any other unlawful and unjustifiable motive." And if the court had gone no further in defining malice this objection would be tenable, for, as was said in *Nye v. People*, 35 Mich. 16, there may be unlawful and unjustifiable motives which are not reckoned as malicious. But the portion of the charge in question was immediately qualified and explained by the court; and when the whole charge upon the subject is considered we think the appellant has no serious grounds of complaint, although the definition of malice as given by the court might in fact have been more concise and explicit.

Error is also predicated upon the second and third paragraphs of the charge, and it must be conceded that the meaning of the second paragraph is not free from doubt; and that portion of the instruction was calculated to confuse and mislead the jury rather than to enlighten them as to the law applicable to the case. From the language therein used the jury were warranted in believing, and probably did believe, the law to be that where one person, without previous malice, and without such provocation as is sufficient to excite reasonable apprehension of personal injury, or violence, shoots another in such a way as is likely to occasion death, he is guilty of murder. But

such is not a correct view of the law as a general proposition. In fact, one person may voluntarily kill another, without malice, upon a sudden heat, and thereby commit manslaughter only. (Penal Code, § 7). And if such sudden heat is produced by adequate provocation the act of killing is deprived of that degree of malice which is essential to constitute the crime of murder.

But the third paragraph of the charge is even more objectionable than the preceding one. While the court correctly stated to the jury that the natural and probable consequences of every act deliberately done by a person of sound mind is presumed to have been intended, yet the rule of evidence so announced has no application to the case at bar. The rule applies only to offenses actually committed, i. e., to "consequences" which really ensue, and not to those which do not ensue. *Roberts v. People,* 19 Mich. 409. The crime here charged consists of two essential elements; first, an assault, and second, a specific felonious intent to kill. Both these elements were alleged as facts in the information, and it was therefore incumbent upon the state to establish them *as facts* by competent evidence. And it was for the jury, and not the court, to determine the existence of both these facts. But the court by this charge invaded the province of the jury and assumed to draw the proper inferences from hypothetical facts stated, as a mere presumption of law. "If," as was said by the supreme court of Michigan in *Maher v. People,* 10 Mich. 218 (81 Am. Dec. 781), "courts could do this, juries might be required to find "the fact of malice where they were satisfied from the whole evidence it did not exist."

In *Simpson v. State,* 59 Ala. 1 (31 Am. Rep. 1), which was a prosecution for an assault with intent to murder, the question of intent is so logically and lucidly discussed by

the court that it was said in *White v. State*, 13 Tex. App. 259, that the reasoning of the court was exhaustive of the subject. In that case *(Simpson v. State, supra)*, the learned court said:

"The intent cannot be implied as matter of law; it must be proved as matter of fact, and its existence the jury must determine from all the facts and circumstances in evidence. It is true, the aggravated offense with which the defendant is charged cannot exist, unless if death had resulted, the completed offense would have been murder. From this, it does not necessarily follow, that every assault from which if death ensued, the offense would be murder, is an assault with intent to murder, within the purview of the statute, or that the specific intent, the essential characteristic of the offense, exists. Therefore, in *Moore v. State* (18 Ala. 533), an affirmative instruction, 'that the same facts and circumstances which would make the offense murder, if death ensued, furnish sufficient evidence of the intention,' was declared erroneous. The court say: 'There are a number of cases, where a killing would amount to murder, and yet the party did not intend to kill. As if one from a housetop recklessly threw down a billet of wood upon the sidewalk where persons are constantly passing, and it fall upon a person passing by and kill him, this would be, by the common law, murder; but if instead of killing him, it inflicts only a slight injury, that party could not be convicted of an assault with intent to murder.' Other illustrations may be drawn from our statutes; murder in the first degree may be committed in the attempt to perpetrate arson, rape, robbery or burglary, and yet an assault committed in such attempt, is not an assault with intent to murder. If the intent is to ravish, or to rob, it is under the statute, a distinct offense from an assault with intent to murder, though punished with the same severity. And at common law, if death results in the prosecution of a felonious intent, from an act *malum in se*, the killing is murder. As if A shoot at the poultry of B, intending to shoot them, and by accident kills a human being, he is guilty of murder. 1 Russ. Cr. 540. Yet, if

death did not ensue, if there was a mere battery, or a wounding, it is not, under the statute, an assault with intent to murder. The statute is directed against an act done, with the particular intent specified. The intent in fact, is the intent to murder the person named in the indictment, and the doctrine of an intent in law different from the intent in fact, has no just application; and if the real intent shown by the evidence is not that charged, there can not be a conviction for the offense that intent aggravates, and in contemplation of the statute, merits punishment as a felony. . . . As is said by Mr. Bishop, the reason is obvious, the charge against the defendant is, that in consequence of a particular intent reaching beyond the act done, he has incurred a guilt beyond what is deducible merely from the act wrongfully performed; and therefore, to extract by legal fiction from this act such further intent, and then add it back to the act to increase its severity, is bad in law. 1 Bish. Cr. Law, § 514."

And in that case, as in this, the lower court charged the jury that a man must be presumed to intend the natural and probable consequences of his acts. And in regard to this charge the court observed:

" The *sixth* [charge], asserts the familiar principle of the law of evidence, that a man must be presumed to intend the natural and probable consequences of his acts, and from it draws the conclusion, ' that if a man shoots another with a deadly weapon, the law presumes that by such shooting, he intended to take the life of the person shot.' Whether this instruction would, or would not be correct, if death had ensued from the shooting, and the defendant was on trial for the homicide, it is not now important to consider. In a case of this character, the instruction is essentially erroneous, for if it has any force, it converts the material element of the offense, the intent to murder a particular person, into a presumption of law, drawn from the nature of the weapon, and the act done with it; while the intent is a fact which must be found by the jury, and the character of the weapon, and the act done, are only facts from which it may or may not be inferred. The weapon

used, and the act done, may in the light of other facts and circumstances, import an intent to maim, or merely to wound, distinct offenses from that imputed to the defendant; and maiming or wounding, is a probable, natural consequence of the act done, with such weapon. . . . In *Scitz v. State* (23 Ala. 42), a similar question was considered. On an indictment for an assault with intent to murder, the jury returned a special verdict, finding the defendant 'guilty of striking with a loaded whip, calculated to produce death, without any excuse or provocation,' on which judgment of conviction was pronounced, which was reversed, because it was not a legal conclusion from the facts stated, that the defendant had the particular intent to murder the person assailed. 'An assault simply with intent to frighten,' say the court, 'maim or wound, without producing death, or for the purpose of inflicting punishment or disgrace, is equally consistent with the finding of the jury, as that it was an assault with intent to murder.' The true principle is, that the particular intent, the intent to murder the person assailed, is matter of fact, about which the law raises no presumptions, and indulges no inferences. . . . The jury must find the fact; and in ascertaining its existence, they may and will draw inferences from the character of the assault, the want, or the use of a deadly weapon, and the presence, or absence of excusing or palliating circumstances. . . . What are the presumptions or inferences in view of all the facts, they must be left free to determine; and the court misleads them, and invades their province, if a part only of the facts is singled out, and they are instructed from them, the felonious intent must be inferred."

And in *Roberts v. People, supra*, which is one of the best considered cases to be found in the books, the court, in discussing the question now under consideration, said:

"We think the general rule is well settled, to which there are few, if any, exceptions, that when a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the

act itself, and must be found by the jury, as matter of fact, before a conviction can be had. But especially, when the offense created by the statute, consisting of the act and the intent, constitutes, as in the present case, substantially an attempt to commit some higher offense than that which the defendant has succeeded in accomplishing by it; we are aware of no well founded exceptions to the rule above stated. And in all such cases the particular intent charged must be proved to the satisfaction of the jury; and no intent in law, or mere legal presumption, differing from the intent in fact, can be allowed to supply the place of the latter."

And Mr. Bishop, in vol. 1, § 735, of his New Criminal Law, lays down the law on this question as follows:

" On an indictment for a technical attempt, wherein, in the words of CAMPBELL, J., ' intentions can only be proved by acts, as juries cannot look into the breast of the criminal,' they may consider the nature and tendency of a proven act to determine the intent prompting it. And the court will instruct them that the doer should be presumed to have intended its natural and probable consequences. Yet— . . . They cannot go further. The doctrine of an intent in law, differing from that in fact, is not applicable to these technical attempts; and if the prisoner's real purpose was not what the indictment specifies, the preceding explanations show that he must be acquitted. A further view is that in reason we cannot first draw an evil intent from an act, and then enhance the evil of the act by adding this intent back again to it. There are a few cases which seem to overlook this truth, and even possibly to deny it; but it is sustained by very nearly the entire mass of judicial authority, English and American."

Viewed in the light of the foregoing authorities and many others which might be cited announcing the same doctrine, the instruction in question is manifestly erroneous. In this connection, the defendant by his counsel requested the court below to instruct the jury that:

" 1. The defendant in this case being charged with shoot-

ing and wounding one James M. Snyder with the intent to kill and murder the said James M. Snyder, before the defendant can be convicted as charged in the information, it is necessary that you be satisfied by the evidence beyond a reasonable doubt, not only that the defendant did shoot and wound said Snyder, but that in so doing he intended to kill and murder said Snyder. This intent is as essential an element of the crime as is the act itself, and must be found by the jury as a matter of fact before a conviction can be had of the crime charged in the information.

" 2. As the defendant is not charged with murdering said Snyder, but simply shooting and wounding him with intent to murder, there can be no question of implied intent in the case. The intent necessary to sustain a conviction must be an express and positive intent to murder.

" 3. If you would find from the evidence that the defendant shot and wounded said Snyder, and intended to shoot and wound said Snyder, but are not satisfied that in so doing he intended to *kill* said Snyder, you cannot find the defendant guilty as charged in the information. An intent to *wound* is not sufficient."

The court refused to give these instructions to the jury, and it follows from what we have already said that in our opinion it thereby committed error.

The defendant by his counsel also requested the trial court to instruct the jury to the effect that the jury might, in case the evidence warranted them in so doing, find the defendant guilty of assault or assault and battery. Our statute provides (Code Proc., § 1320) that a defendant may be found guilty of any offense necessarily included within the crime charged in the indictment or information, and we think these requests of the defendant should, under that statute, have been given to the jury. They were included within the charge specified in the indictment, and the law seems to be well settled that one indicted for an assault with intent to commit murder may

be convicted of an assault, or of assault and battery, if
properly charged. *State v. Ackles*, 8 Wash. 462 (36 Pac.
597); *Dolan v. State*, 44 Neb. 643 (62 N. W. 1090);
*Mooney v. State*, 33 Ala. 419; *Johnson v. State*, 17 Tex.
515; *State v. O'Kane*, 23 Kan. 244; *Harrell v. State*, 13
Tex. App. 374; *Carter v. State*, 28 Tex. App. 355 (13
S. W. 147); 1 Bishop, New Criminal Law, § 780; 2 Bishop,
New Criminal Procedure, § 660; Desty, Criminal Law,
§ 131a.

In *Dolan v. State, supra,* this precise question was care-
fully considered. In that case it appeared that the defend-
ant was excessively intoxicated at the time of the commis-
sion by him of the alleged offense, and the court instructed
the jury that they had a right to consider the intoxication
of the defendant as reflecting light upon the question
whether he was, by reason of drunkenness, in such a mental
condition as to be capable of entertaining the intent to
kill, but failed to instruct that, under a charge of an as-
sault with intent to commit murder, the defendant might
be convicted of assault, or assault and battery. No request
for such a charge was there made by the defendant, and
the court said:

" The information included a charge of the lower de-
grees of assault, as well as assault with intent to murder
(2 Bishop, Criminal Procedure, 63), and it was the right
of the accused to have all of the issues properly submitted
to the jury. We had occasion recently in the case of
*Carleton v. State*, 43 Neb. 373 (61 N. W. 699), to ex-
amine the subject with care, and the conclusion therein
announced is that it is the duty of the trial court to prop-
erly present the issues to the jury, and a charge as a whole
which, by the omission of certain elements, has the effect
of withdrawing from the consideration of the jury essen-
tial issues, is erroneous."

Under the charge of the court in this case the jury were

entirely precluded from finding the defendant guilty of any less crime than that of an assault with intent to commit murder, although they may have been satisfied that, in fact, he was guilty only of one of the lesser offenses charged in the information.

Defendant also requested the court to instruct the jury as to the law of partial, or imperfect, self-defense, and the instructions requested are apparently correct as abstract propositions; but as we are unable to determine from the bill of exceptions whether they were pertinent to the facts before the court we will express no opinion as to the court's action in refusing them.

Some requests were also made for instructions concerning intoxication, as affecting the degree of defendant's guilt, which we think might have been properly given by the court.

We are also of the opinion that the court erred in not permitting the witness Phelps to answer the question whether Dolan appeared to be so intoxicated that he did not know what he was doing. It was not a question upon which only an expert could express an opinion. The witness having seen, noted and stated the condition, appearance and actions of Dolan, had sufficiently shown his qualification to testify as to the extent of his intoxication. Such testimony is received in proof of insanity, and we see no valid reason why the question propounded should not have been answered. See 1 Wharton, Evidence, § 512 and notes.

We are not now called upon to determine whether the verdict of the jury was justified by the evidence. It may, or may not, have been so justified. But it is at least possible that the verdict might have been different had the law applicable to all the issues been clearly and explicitly given to the jury, which we have endeavored to show was not

33—17 WASH.

done. We do not, of course, desire to be understood as holding, or even intimating, that voluntary intoxication is an excuse for crime actually committed, for such is clearly not the law. We have simply attempted to demonstrate that where a crime consists, as in this case, of an act and an intent to perform an ulterior act, which was in fact not accomplished, intoxication may, and should be, considered in determining whether the accused actually entertained the specific intent charged.

For the errors above indicated the judgment and sentence is reversed and the cause remanded for a new trial.

Scott, C. J., and Reavis, J., concur.

Dunbar, J., dissents.