[No. 10526.   Department Two.   February 24, 1913.]

THE STATE OF WASHINGTON, *Respondent*, v. E. DAVIS, *Appellant*.[1]

ASSAULT—AGGRAVATED ASSAULT—EVIDENCE—SUFFICIENCY. A conviction for second degree assault upon conflicting evidence is sustained, where there was testimony to the effect that the accused made a sudden assault with a shoe knife to avenge a grievance of his younger brother, while the prosecuting witness was unarmed and at a disadvantage.

· SAME—ELEMENTS OF OFFENSE—GRIEVOUS BODILY HARM—QUESTION FOR JURY. Under the statute making the inflicting of grievous bodily harm upon another an essential element of assault in the second degree, the question is one of fact for the jury and not of law for the court, and it is error for the court to determine the same in its instructions.

[1]Reported in 130 Pac. 95.

CRIMINAL LAW—TRIAL—INSTRUCTIONS—PRESUMPTIONS AS TO NAT-URAL AND PROBABLE CONSEQUENCES. The presumption that the accused intended the natural and probable consequences of his acts does not extend beyond the actual consequences; and where the wounded person recovered from an attack that was likely to produce death, it is error to instruct the jury that they could presume that the attack was made with intent to kill, if death was the usual and ordinary result of the defendant's voluntary acts.

ASSAULT—AGGRAVATED ASSAULT — EVIDENCE — MATERIALITY. In a prosecution for aggravated assault, inflicted to avenge a grievance of the accused's brother, to which the accused was not a witness and had only second-hand information, it is proper to exclude evidence of the altercation with prosecuting witness constituting the brother's grievance, as the same is immaterial.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered December 4, 1911, upon a trial and conviction of second degree assault. Reversed.

*Samsel & Engeset*, for appellant.

FULLERTON, J—The appellant was informed against for the crime of assault in the first degree, the information reading as follows:

"Comes now Ralph C. Bell, as the duly elected, qualified and acting prosecuting attorney for the county of Snohomish, state of Washington, and by this his information, charges and accuses the above named defendant, E. Davis, with the crime of assault in the first degree.

"In that on or about the 26th day of August, 1910, in the county of Snohomish, state of Washington, the said defendant, E. Davis, did unlawfully, and with intent to kill one Elmer Moss, assault said Elmer Moss with a deadly weapon, to wit: a knife then and there held in the hands of him, the said defendant, E. Davis, and did then and there wilfully inflict grievous bodily harm upon the said Elmer Moss with and by means of said deadly weapon aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Washington."

To the information, the appellant pleaded not guilty, and was put upon his trial before a jury, which returned a verdict finding him guilty of assault in the second degree. From

the judgment and sentence pronounced against him upon the verdict, he appeals.

Of the errors assigned, the first to be noticed is the assignment to the effect that the evidence is insufficient to justify the verdict returned by the jury. In support of this assignment, the appellant quotes largely from the testimony of himself and the testimony introduced on his behalf; and it may be that, if this testimony stood alone, there would be merit in the contention. But the evidence was conflicting. That on the part of the state tended to show that the assault was wanton and cruel. It appeared that the prosecuting witness had just passed his sixteenth birthday, while the appellant was some two years his senior; that there was no previous acquaintance between the appellant and the prosecuting witness, nor any quarrel between them preceding the assault; that the assault was made to avenge some real or fancied grievance a younger brother had against the prosecuting witness, and not any quarrel of the appellant's own; that it was made with a shoe knife, although the prosecuting witness was without weapons of offense or defense of any kind; and was made upon the prosecuting witness while he was in a reclining position upon the ground, suddenly, and before he could assume, or attempt to assume a defensive attitude. There was, therefore, clearly a sufficient dispute in the evidence to require the submission of the cause to the jury.

The court, among other instructions, gave the following to the jury:

"You are further instructed that assault in the second degree, for the purposes of this case, is defined by the law as follows: 'Every person who, under circumstances not amounting to assault in the first degree, shall wilfully inflict grievous bodily harm upon another with a weapon, shall be guilty of assault in the second degree.'

"Therefore, if you shall believe the evidence beyond a reasonable doubt, as that doubt is defined to you in these instructions that the defendant, Elbert Davis, in the county of Snohomish, state of Washington, on or about the date al-

leged, wilfully inflicted grievous bodily harm upon Elmer Moss with a weapon and are not satisfied beyond a reasonable doubt that he intended to kill him, then you must find the defendant guilty of assault in the second degree.

"In this connection you are instructed that the harm and injury suffered by Elmer Moss, as testified in this case, was grievous bodily harm within the meaning of the law."

The appellant complains of the last clause of the instruction, contending that the question whether or not the wounds inflicted by the appellant upon the person assaulted amounted to grievous bodily harm within the meaning of the law was a question of fact for the jury, and not one of law for the court. Logically this contention seems to be sound. Since the subdivision of the statute under which the information is drawn makes the infliction of grievous bodily harm upon another an essential element of assault in the second degree, it is, of course, necessary to charge in the information that the injury inflicted was grievous bodily harm, and since the plea of not guilty puts in issue all of the material allegations of the information, it must follow that the question whether the particular injury inflicted amounts to grievous bodily harm is a question of fact for the jury to determine, rather than a question of law for the presiding judge. The court should therefore have defined the term grievous bodily harm to the jury, and left it to them to say whether the particular wounds inflicted upon the prosecuting witness came within the definition of the term.

To the same effect are the authorities. In *Murphey v. State*, 43 Neb. 34, 61 N. W. 491, the defendant was convicted of the crime of assault with intent to inflict on the person of another great bodily injury, and appealed from the judgment of conviction. Discussing the grounds for reversal suggested by counsel in the course of the argument on the appeal, the court used this language:

"The term 'great bodily injury,' as employed in the statute, is perhaps not susceptible of a precise legal definition. It is, however, an injury of a graver and more serious character

than an ordinary battery; and whether a particular injury is
within the meaning of the statute, is generally a question of
fact for the jury and not of the law.  (See *State v. Gillett*, 56
Ia. 459.)   That a great bodily injury, within the meaning
of the statute, may be inflicted without the use of a 'danger-
ous' or even 'offensive' weapon is quite apparent from the
facts of this case, to which reference will hereafter be made."

In *State v. Gillett*, 56 Iowa 459, 9 N. W. 362, complaint
was made of the instruction of the court to the jury, concern-
ing which the court said:

"The prosecuting witness, Zeaman Magoon, at the time of
the injury complained of lived with the defendant, and at the
time of the trial was about eight years old.   He testified that
the defendant whipped him with a crupper to harness, with
a buckle on the end of it.   He was examined some time after-
ward, and injuries, covered with scabs, some of which were
suppurating, were found on his back and side.   The court
gave the jury an instruction as follows: 'A great bodily in-
jury is an injury to the person of a more grave and serious
character than an ordinary battery, and the indictment
charges that defendant intended to inflict such an injury on
the boy Magoon.   It is not only necessary for the state to
prove that the defendant committed an assault, but it must
go farther and prove the intent with which he committed it,
and that it was to inflict a grave and more serious injury than
an ordinary battery or whipping.   If the proof should show
an assault and battery, but fail to show the ulterior intent
charged, the conviction could only be for assault and bat-
tery.'   The giving of this instruction is assigned as error.   It
must be conceded that the instruction does not furnish the
jury the means of determining what is the extent of an injury
which will constitute a great bodily injury, for the limits of
an assault and battery with which it is compared and which
it is declared to exceed, are not defined.   And yet it must
be admitted that the instruction defines a great bodily injury
as accurately and completely as it is susceptible of definition,
as a matter of law.   Whether an injury is a great or only a
slight bodily injury is essentially a question of fact, and it
is difficult to see how any greater aid can be furnished the
jury in determining that question than was done by the court
in this case."

For other authorities touching the general question, although perhaps not so directly in point, see: *Smith v. State,* 58 Neb. 531, 78 N. W. 1059; *Rogers v. State,* 60 Ark. 76, 29 S. W. 984, 46 Am. St. 164, 31 L. R. A. 465; *People v. Miller,* 91 Mich. 639, 52 N. W. 65; *George v. State,* 21 Tex. App. 315, 17 S. W. 351; Bishop, Statutory Crimes, § 318; Roscoe, Criminal Evidence (8th ed.), p. 772.

The court gave the following instruction to the jury:

"You are further instructed that every man is presumed to intend the usual, ordinary and natural results of his voluntary acts, even though there be no direct or positive proof of such intention.

"Therefore if you shall believe from the evidence beyond a reasonable doubt that the defendant, Elbert Davis, in the county of Snohomish, state of Washington, at or about the time alleged, inflicted the harm upon the said Elmer Moss which has been testified to, then you have a right to presume that the defendant intended to do so; and if you shall believe from the evidence beyond a reasonable doubt that the usual, ordinary and natural result of the defendant's voluntary acts would likely result in death, then you have a right, if consistent with all the testimony in this case, to infer that he intended to cause death."

This instruction is also erroneous. While it is true that a man is presumed to intend the natural and probable consequences of his acts, it is true also that the presumption arising from the acts alone never extends beyond the actual consequences of the acts. If one person wilfully assaults another and inflicts upon him a dangerous wound, the jury would have the right to infer from the act that he intended to inflict the dangerous wound; or, if one person wilfully assaults another and inflicts upon him a dangerous wound likely to cause death and death ensues therefrom, the jury have the right to infer from the act and its consequence that he intended to kill the person assaulted; but if a man assaults another and inflicts upon him a dangerous wound likely to cause death but death does not ensue, the jury have no right to infer from the

act alone that he intended to kill, because such was not the consequence of the act. *State v. Dolan,* 17 Wash. 499, 50 Pac. 472; *State v. Williams,* 36 Wash. 143, 78 Pac. 780. So in the instruction in question, it was error to instruct that the jury might infer from the mere assault and the infliction of the wound that the defendant intended to kill the prosecuting witness, because death was not the consequence of the act. Intent in such cases is gathered from all the circumstances of the case, of which the assault and wounding are only a part.

While the appellant's brother, Trueman Davis, was on the witness stand, he was asked concerning an altercation he had had with the prosecuting witness some little time before the encounter between the prosecuting witness and the appellant. Objections were interposed and sustained to this line of examination, we think properly, on the ground that it was immaterial. It was not shown nor offered to be shown that the assault made by the appellant was made in defense of his brother, and consequently the altercation between the brother and the prosecuting witness would afford no justification for the appellant's acts. It is said, however, that such acts were admissible as tending to show the appellant's condition of mind, and as affecting the question of his intent and purpose in making the assault. But, again, it was not shown that he was a witness to the altercation; on the contrary, the evidence showed the fact to be otherwise, and that his knowledge of it could be but second hand. What he was informed concerning it, and not the actual occurrence, was therefore the material inquiry. To show what the brother told the appellant concerning the difficulty between himself and the prosecuting witness might have been material, but not so the actual occurrence, unless it was further shown that the appellant witnessed the actual occurrence.

Complaint is also made that the court did not submit the appellant's theory of the encounter to the jury, but no fault can be justly found with the instructions in this respect.

The judgment is reversed and the cause remanded for a new trial.

MOUNT, MAIN, ELLIS and MORRIS, JJ., concur.