[No. 34336.   Department One.   May 22, 1958.]

THE STATE OF WASHINGTON, *Respondent*, v. HAROLD RING, *Appellant*.[1]

*Raftis & Raftis,* for appellant.

*Richard A. Perry,* for respondent.

HUNTER, J.—On October 2, 1956, the prosecuting attorney for Ferry county, Washington, filed an amended information charging Harold Ring, his sixteen-year-old son, Harold Matthew Ring, and Eugene Merle Bailey with the crime of assault in the second degree, committed upon one Charles Coffman on July 9, 1956.

[1]Reported in 325 P. (2d) 730.

The defendants entered a plea of not guilty and the case came on for trial before a jury on March 6, 1957. At the conclusion of the trial, the jury returned a verdict finding Harold Ring and his son guilty as charged; Bailey, not guilty. The trial court denied defendants' motion for arrest of judgment or, in the alternative, for a new trial and, on May 1, 1957, entered an order placing the defendant Harold Ring on probation for two years and, as a condition of probation, required him to serve five months in the county jail. Defendant Harold Matthew Ring (the son) was placed on probation for five months. *From this order, Harold Ring (the father) alone has appealed.*

Appellant contends the trial court erred in giving instruction No. 6, which reads as follows:

"You are further instructed that assault in the second degree, for the purposes of this case, is defined by the law as follows: 'Every person who, under circumstances not amounting to assault in the first degree, shall wilfully inflict grievous bodily harm upon another with or without a weapon, shall be guilty of assault in the second degree.'

"Therefore, if you shall believe the evidence beyond a reasonable doubt, as that doubt is defined to you in these instructions that the defendants Harold Ring, Harold Matthew Ring, and Eugene Merle Bailey, in the county of Ferry, state of Washington, on or about the date alleged, wilfully inflicted grievous bodily harm upon Charles Coffman with or without a weapon, you must find the defendants guilty of assault in the second degree.

" *'In this connection you are instructed that the harm and injury suffered by Charles Coffman, as testified in this case, was grievous bodily harm within the meaning of the law.'* " (Italics ours.)

Specifically, the appellant excepted to the giving of the italicized portion of the instruction on the ground that whether grievous bodily harm had been inflicted was a question of fact for the jury to determine from the evidence, and not a question of law to be decided by the court.

This question was decided by this court in *State v. Davis,* 72 Wash. 261, 130 Pac. 95 (1913), wherein we said:

"The appellant complains of the last clause of the instruction, contending that the question whether or not the

wounds inflicted by the appellant upon the person assaulted amounted to grievous bodily harm within the meaning of the law was a question of fact for the jury, and not one of law for the court. Logically this contention seems to be sound. *Since the subdivision of the statute under which the information is drawn makes the infliction of grievous bodily harm upon another an essential element of assault in the second degree,* it is, of course, necessary to charge in the information that the injury inflicted was grievous bodily harm, *and since the plea of not guilty puts in issue all of the material allegations of the information, it must follow that the question whether the particular injury inflicted amounts to grievous bodily harm is a question of fact for the jury to determine, rather than a question of law for the presiding judge.* The court should therefore have defined the term grievous bodily harm to the jury, and left it to them to say whether the particular wounds inflicted upon the prosecuting witness came within the definition of the term." (Italics ours.)

The state argues, however, without discussing the *Davis* case, *supra,* that, in the instant case, there was no dispute as to the *extent* of the injuries of the complaining witness, and that the trial court had the right to rule the injuries were grievous bodily harm within the meaning of the law. As authority for this argument, it cites *State v. Johnson,* 23 Wn. (2d) 751, 162 P. (2d) 440 (1945). In that case, we said:

"That the injuries sustained constituted 'grievous bodily harm,' is not open to controversy. While the court left that issue to the jury, it might well, under the undisputed evidence, have instructed the jury as a matter of law that the injuries inflicted constituted 'grievous bodily harm' under the terms of the statute."

Clearly, the question raised in this appeal was not before this court in the *Johnson* case, the issue of "grievous bodily harm" having been submitted to the jury.

The reasoning of the *Davis* case, *supra,* is sound. It has been and must remain the law of this jurisdiction, in criminal cases, on the question presented. A contrary holding would necessarily affect substantially the constitutional right of an accused to a trial by jury (See Art. I, § 22, Amendment 10, Washington constitution.)

In *State v. Dale,* 110 Wash. 181, 188 Pac. 473 (1920), we said:

"If a trial court cannot decide as a matter of law or fact, upon a jury trial under any circumstances, that a defendant is guilty—that is, that all of the elements of the crime charged have been conclusively established, *manifestly it cannot decide as a matter of law or fact upon such a trial that any one of the substantive elements of the crime charged has been conclusively established.*" (Italics ours.)

See, also, *State v. Christiansen,* 161 Wash. 530, 297 Pac. 151 (1931); *State v. Holmes,* 68 Wash. 7, 122 Pac. 345 (1912); *State v. Coella,* 3 Wash. 99, 28 Pac. 28 (1891).

The trial court properly instructed:

"ALL ALLEGATIONS OF INFORMATION DENIED. To the said Information the defendants have entered a plea of not guilty, which *plea* puts in issue every material allegation contained in said Information, and *the burden is upon the State of proving every fact material and necessary to a conviction* upon the offense charged in the Information, *beyond a reasonable doubt.*" (Italics ours.)

■ Proof of grievous bodily harm was a fact material and necessary to the conviction of the offense charged and whether the state proved this *element* of the crime *beyond a reasonable doubt* is a question of fact for the jury and not one of law for the court. Since the error assigned affects a substantial right of the accused, we cannot say, no matter how clear we feel guilt is established by the record, that it was not prejudicial. The assignment is well taken and a new trial must be ordered for this reason.

There is, however, one other assignment of error which warrants our discussion for the reason that it involves an instruction given the jury which, no doubt, would again be given at the new trial if no mention were made of it. The assignment is directed against instruction No. 21 which reads as follows:

"JURY SHOULD CONSCIENTIOUSLY ENDEAVOR TO RECONCILE THEIR DIFFERENCES, IF POSSIBLE: You are further instructed that it is the duty of jurors to reason together and reconcile their discordant views when possible. While a juror should not consent to a verdict which he thinks contrary to the

evidence out of mere deference to his fellow jurors, yet he may well consider whether a doubt in his mind is a reasonable one which makes no impression on the minds of others as equally honest and equally intelligent with himself, who have heard the testimony out of which the doubt arises, and he may properly change his views because of this consideration. *In other words he can properly doubt the correctness of his own opinion, when it is not concurred in by his fellow jurors, and may, without a violation of his oath, consent to a verdict which he would not alone render.*" (Italics ours.)

Appellant argues that this instruction, in the event of a disagreement among the jurors, could be used by the majority to unduly influence a minority to change its views to conform with the majority for the sake of agreement, although the minority might conscientiously believe one way or the other.

The instruction, if properly understood, might not be misleading. However, instructions are to be given to and understood by lay jurors and the instruction in its present form might tend to confuse a juror as to his fundamental duty.

In *State v. Keeble*, 49 S. D. 456, 207 N. W. 456 (1926), the supreme court of South Dakota said, in *discussing* an instruction similar in language to the one before us:

"This instruction, properly understood, may be all right, but it is an appeal to the jury to get together. While the jury are urged to 'pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments,' in its final analysis, it is an urge to the minority to give greater consideration to the views of the majority, because they are the views of the majority, without cautioning the majority to give equally due deference and consideration to the views of the minority. One honest doubter may be right, and it is as much the duty of the eleven to give open-minded and candid consideration to the views of one as for him to give open-minded and candid consideration to the views of the eleven. Unless all are open-minded, candid, and sincere, there is a very real danger that a wrong conclusion will be reached by all-considered verdicts through the over confidence of numbers. After such instruction, more than ever is it necessary to impress

each juror with his individual responsibility for the verdict that he renders."

■ Likewise, in final analysis, the instruction before us urges the minority to give greater consideration to the views of the majority, because they are the views of the majority. The italicized last sentence of the instruction we find particularly objectionable.

In a criminal case such as this, twelve jurors must concur before a verdict can be reached and if there can be no agreement on a verdict a "hung jury" results. In determining the verdict, it is the duty of the jurors to consider carefully the evidence, and the views and arguments of their fellow jurors. The law contemplates that jurors shall, by their discussion, harmonize their views, if possible, but not that they shall compromise with their consciences and yield to the majority for the mere purpose of agreement. This could well result under a jury's interpretation of the instruction given. Therefore, the court erred in giving it in its present form.

The state contends that the language of the instruction was taken almost verbatim from the case of *State v. Godwin,* 131 Wash. 591, 230 Pac. 831 (1924). This we admit is true. However, *it is not the language of any instruction approved,* but rather the language used by this court in holding that an instruction proposed by the accused therein was properly rejected by the trial court. The language used in discussing the assignment of error was not intended or framed as an instruction, and we expressly disapprove such language as an instruction for the reasons stated above.

In view of our disposition of this appeal, we do not deem it necessary to discuss the appellant's other assignments of error.

The judgment must be reversed, and the case remanded for a new trial for the reasons expressed herein.

It is so ordered.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.